Towne, *Appellant*, v. Bowers.

81 491
139 37
81 491
141 496
81 491
84a 372
81 491
98a ¹257

1. **Injunction**: STATUTE. Injunction may be resorted to under Revised Statutes 1879, section 2722, notwithstanding there may be an adequate remedy at law for the injury, in all cases where such adequate remedy cannot be afforded by an action for damages as such.

2. **Sale of Land**: CONDITION BROKEN: RE-ENTRY: CLAIM. The remedy of the grantor of land, who has the right to re-enter for condition broken, is to enter, and when he cannot enter he must make a claim, and no one can make it for him except the heir.

3. **Tenant**: GROWING CROP. Defendant who was in possession of land, under a contract for its purchase, sowed a crop of wheat, and then, by mutual consent of himself and his vendor, the contract was cancelled, and a new similar one was made by the vendor with H., and it was agreed by the latter that defendant should retain possession as tenant without paying rent while his crop was growing, until the land could be sold, defendant at the time stating that he claimed the crop and intended to gather it. Plaintiff took a transfer of H.'s contract, and received a surrender of the premises from defendant, with the understanding, to which he made no objection, that the latter so claimed the crop and intended to gather it; *Held*, defendant was entitled to the crop.

4. **Emblements**: TENANT AT WILL. A tenant at will is entitled to

emblements, and to that end the law gives him the right of ingress and egress to gather his crop.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Crosby Johnson* for appellant.

The sureties having accepted defendant's proposal, and having purchased new contracts to the land, became the owners of the wheat. Growing wheat is a part of the freehold, and passes along with the land on which it is sown. *McIlvaine v. Harris*, 20 Mo. 458; *Pratte v. Coffman*, 27 Mo. 424; *Steele v. Farber*, 37 Mo. 72; *Tripp v. Hasceig*, 4 Am. R. 388; *Baird v. Brown*, 28 La. An. 842. The fact that the grant which Bowers made to his sureties was not in writing, would not alter the legal effect of the grant, because Bowers did not have such an interest in the land as required a writing to transfer. Having failed to meet his payments to the railroad company as they became due, he occupied the position of a strict tenant at will. Washb. Real Prop., (2 Ed.) 376*, § 25; Taylor's L. and T., § 25. He was not entitled to notice to quit. *Glasscock v. Robards*, 14 Mo. 350; Tyler on Eject., 216. "He had no certain, indefeasible estate, nothing which he could assign." 1 Wash. Real Prop., (2 Ed.) *370, § 2; Taylor's L. and T., § 62. The company could have ousted him by ejectment. *Gibbs v. Sullens*, 48 Mo. 237. And have taken the crop with the land. Freeman on Execution, § 474; *McLean v. Bovee*, 1 Am. R. 185. A strict tenant at will, which defendant was, is not entitled to emblements. Taylor on Landlord and Tenant, §§ 60, 537. Even if it be conceded that under the first agreement between Bowers and his sureties, he would have been entitled to the emblements had he planted the crops during the tenancy, still the right was abrogated by the second agreement between them.

*J. A. Holliday* for respondent.

Bowers was Houghton's tenant at will, and was entitled to the growing crops. 1 Washb. Real. Prop., p. 506; 2 Flint Real Prop., 216; *Davis v. Thompson*, 13 Me. 209. When a tenancy is terminated by the act of the landlord, or by notice to quit, the tenant is entitled to the growing crops. Taylor Landlord and Tenant, § 535; 9 Johns. 108. The case of *McIlvaine v. Harris*, 20 Mo. 458, is not in point; in that case McIlvaine sought to contradict his deed by parol, but in the case at bar no deed or written conveyance was offered in evidence, nor is it pretended that Bowers sold to plaintiff.

PHILIPS, C.—This is a proceeding by injunction. The petition avers that plaintiff is the owner of certain real estate, on which there was then growing about ten acres of wheat, and that petitioner is in possession of the land and wheat. It is then averred that the defendant sets up claim to the wheat, and threatens to enter upon said land to cut and carry the wheat away. The insolvency of the defendant is averred, and the prayer is, that defendant be injoined from cutting, removing, or in any manner interfering with said wheat.

The answer admits plaintiff's ownership of the land, but denies his alleged ownership of the wheat, as, also, his possession. It then pleads that prior to the month of March, 1878, when the title of plaintiff to said land first accrued, the defendant was in possession of the same lawfully, and while he so held it he cultivated it and sowed said wheat thereon; that at and before the plaintiff purchased the same, and at the time defendant surrendered possession of any part of the land, he notified the plaintiff that he retained the possession of said wheat and land, and reserved to himself the exclusive right to enter and harvest the same. The further defense is made that at the time the action was brought by plaintiff the defendant had already cut and

shocked the wheat on the ground in said field. The reply is a general denial.

The evidence on plaintiff's behalf, tended to prove that the defendant was in debt, and that one Houghton, Halstead and Kautz were sureties for him in considerable sums, and defendant to protect them, proposed to turn over to them certain lands he had bought of a railroad company, and other property mentioned. It appears from the parol statement of Houghton on the witness stand that defendant held said land under a contract with the railroad, and "as he failed to make payments of indebtedness as they became due his contracts to the land were subject to forfeiture at any time. The contracts were not put in evidence, and this is the only evidence we have of their provisions. Houghton and defendant went to the agent of the railroad company, and defendant's contract, at his instance was canceled, and a like contract made between the company and said Houghton. It was stipulated, so says Houghton, at the time that defendant should remain in possession of the land until Houghton should make sale of the land. He testified that nothing was there said about the growing crop of wheat on the ten acre piece. Afterwards, during negotiations with plaintiff or his agent for the sale of the land to him, he named to defendant that he would have to give up the land soon, when defendant informed him he claimed the wheat and would not surrender it; that defendant requested him in the sale to Towne to put in a certain tract of timber land held by defendant at a given price, and if he succeeded therein, the defendant would give up possession of the land. This was arranged, and the proceeds of this land paid over to defendant, amounting to about $500. The sale of the land was made to Towne through the latter's brother as agent, and possession was to be given the first of May, 1878. This witness admitted, that when he met the plaintiff to transfer to him the contract with the railroad for the land they were informed by one Surle that defendant claimed the wheat, and was going to cut it. This wit-

ness also stated that, before he contracted with Towne, he asked the defendant to pay rent if he stayed on the place, but he refused. Kautz admitted in his testimony that he heard of defendant's claim to the wheat when they sold the timber land or shortly afterwards. Halstead also testified that "Moses Towne told us before the sale to plaintiff was complete, that Bowers claimed the land."

Defendant's evidence tended to show that when he and Houghton went to the railroad agent, the latter asked him if he had any objection to the company canceling the old contracts, to which he assented, and the arrangement was made as stated with Houghton; that defendant was to continue on the place and cultivate it until sold. This was in January. It was about the first of March that Houghton wanted defendant to pay rent, which was declined, because the agreement was that he was to occupy rent free. Before Towne bought, Moses, his brother and agent, came to see defendant about getting possession, when defendant told him he could have possession except the wheat, which he had sown and was going to cut. To which Towne made no objection. That when Houghton informed defendant of the proposed sale to Towne he advised him of his (defendant's) claim to the wheat, and that he would cut it; to which Houghton made no answer. Houghton stated to the witness Surle, before he sold the land to plaintiff, that defendant claimed the wheat, and there was no use to try to sell the land that year. The evidence quite clearly showed that when the writ of injunction was sued out and served the wheat was already cut and stacked on the ground. The court found the issues for the defendant and dissolved the injunction. The plaintiff brings the case here by appeal.

I.   The view first entertained by us of this case was that, under the facts disclosed by the record, the action of injunction was misconceived, because at the time it was sued out the wheat was cut and stacked on the ground. Being severed from the soil it was then essentially personal property, and replevin it was thought was the appropriate

and effectual remedy. But on consideration, the court are of the opinion that under section 2722, Revised Statutes, the action of injunction may be resorted to, notwithstanding there may be an adequate remedy at law for the injury, in all cases where an adequate remedy cannot be afforded by an action for damages as such. Conceding this to be correct, it would still be an open question, under the facts of this case, where the party had entered and cut the wheat and left it stacked on the premises, whether injunction is maintainable. For now, as before the statute in question, injunction is a remedy to prevent threatened injury, and not for an act already accomplished. And unless it appeared that after the act of severance the wrong-doer is about to go further and remove the property from the premises to plaintiff's injury, the bill ought not to be maintained. No injury was occasioned to the crop by cutting and stacking it. It was an actual benefit to the plaintiff if he was the owner. But conceding that the purpose of the defendant to remove and convert it is sufficiently manifested by the act of cutting, we will determine the case on the issues considered by the circuit court.

II. The defendant being in possession under a contract of purchase from the railroad company, sowed this wheat in the fall of 1877. As such purchaser he had the right to do so. His right to continue in possession and gather the crop, as between him and his vendor, would depend upon the terms of the contract, and the action the vendor might see fit to take to oust the vendee before the maturity of the crop. The only evidence we have of the provisions of this contract is secondary, if not heresay. It is contained in the statement of the witness Houghton, testifying on behalf of plaintiff, that "the land was subject to forfeiture at any time" by reason of failure to make payments thereon. When the imputed default occurred and whether it was such as would work a forfeiture of the growing crop, does not affirmatively appear and is left to implication, if not conjecture. The burden of proof rest-

ing upon the plaintiff no implication can be indulged in his favor, save such as arises from legal presumptions or the natural result of the facts proved.

Forfeitures are not the favorites of the courts. " The law will not imply them from slight circumstances, but they must be formally and clearly declared." *Cheny v. Bonnell,* 58 Ill. 271; *Froehlich v. Atlas Ins. Co.,* 47 Mo. 406. So much so is this the rule, that courts of equity never lend their aid to enforce a forfeiture, but will often relieve against them. *Messersmith v. Messersmith,* 22 Mo. 369. The remedy of the grantor for condition broken, is to enter, and when he cannot enter he must make a claim, and no one can make it for him, except the heir. *Jones v. St. L., K. C. & N. R'y Co.,* 70 Mo. 93, and authorities cited. It does not appear from the record that the vendor had taken any steps to enforce the alleged forfeiture, or was even complaining of the defendant's alleged delinquency. Under such circumstances it cannot be maintained that the defendant had forfeited his right to gather his crop, when the arrangement was entered into to turn over the contract to Houghton. See *Cheny v. Bonnell,* 58 Ill., *supra.* On the contrary the arrangement for the substitution of Houghton was not coerced, or even suggested by the railroad company, but was suggested by the defendant as a means of saving harmless his sureties bound for him on other debts. And it is noticeable that when the parties went to the railroad agent to effect the arrangement, as shown by defendant's testimony and not contradicted by the plaintiff, the agent inquired of the defendant if he had any objection to the cancellation of the contract, as if recognizing a subsisting right in the defendant to retain his contract. The plain common sense and equity of this transaction was, that the sureties would take the land for their protection, with the express agreement that the defendant would retain the possession and cultivate it until Houghton found a purchaser. Defendant testified that he was to so retain it, rent free. As proof that Houghton re-

32—81

garded him as a tenant he afterward wanted him to pay rent. The authorities are quite uniform in holding that such a tenancy is one at will. Co. Litt., 68; *Rex v. Collett*, Russ. & Ry. 498; *Ellis v. Paige*, 1 Pick. 44; *Post v. Post*, 14 Barb. 253; *Harris v. Frink*, 40 N. Y. 32, and authorities cited

The plaintiff, as did Houghton, knew before he contracted for this land that the defendant claimed the wheat and intended to harvest it. The defendant so informed him through the agent Moses Towne, when he came to see him about getting possession in the event he bought of Houghton. He was distinctly told he could have the possession of the land, but the wheat was the defendant's, and that he would cut it. To this the plaintiff made no objection, and took a mere transfer of Houghton's contract with that understanding. Accordingly the defendant, on the 1st of May, surrendered the possession of the land. After the plaintiff thus obtained the possession to demand the wheat was a fraud on the defendant, which a court of equity will not promote. The fact that defendant, under such conditions, surrendered the possession did not militate against his right to return and gather the crop. *Stewart v. Doughty*, 9 John. 112. A tenant at will is entitled to emblements, and to that end the law gives him the right of egress and ingress to gather his crop. Co. Litt. 736. " It is without all question that the lessee shall have it (the crop) for by the same reason, that he shall have it when he is put out before it be ripe, he shall have it when he is put out when it is ripe. *Et ubi eadem est ratio, ibi idem jus*." *Ib.* p. 740; 2 Flint. Real Prop., 216, 218; *Davis v. Thompson*, 13 Me. 215; *Sherburn v. Jones*, 20 Me. 70; Taylor L. & T., (7 Ed.) 534. This is always so when the landlord, by his act, terminates the tenancy. ·

It is suggested by appellant that, as emblements are given by the law to induce the tenant to properly cultivate the land, and not as a reward for labor already done in planting, the rule cannot be invoked in this case against

the plaintiff, because the defendant planted before the relation of tenant between them attached. This is more specious than equitable or reasonable. Both plaintiff and his assignor, as already stated, were aware when they came voluntarily to deal with the land that the defendant, holding under the railroad company, had sown this wheat. They consented for him to hold his possession as a tenant at will while his crop was growing until the sale to plaintiff, or whoever bought, was completed, and with the distinct statement made by defendant that he claimed the wheat and would gather it. Without objection the plaintiff so obtained the possession of the premises. The reason of the rule invoked had not ceased to operate under such circumstances. At all events, equity in such a state of facts, will deny her courts to a party thus seeking to "gather where he has not sown."

The judgment of the circuit court is therefore affirmed. All concur.