SEASE *et al.*, *Appellants*, v. CLEVELAND COOPERATIVE STOVE AND HOLLOW WARE FOUNDRY COMPANY *et al.*

### Division One, November 23, 1897.

1. **Practice:** FORFEITURES. Courts of equity never lend their aid to the enforcement of forfeitures.

2. ———: SPECIFIC PERFORMANCE: DISCRETION OF COURT. The specific performance of a contract in equity is a matter, not of absolute right, but of the sound discretion of the court. So that if a decree for specific performance would, in effect, be an enforcement of a forfeiture for the non-performance of a contract, a court of equity will not grant it.

3. **Sound Discretion of Court:** CASE DETERMINED. The evidence shows that three hundred and twenty citizens raised $15,000 and bought a tract of land and conveyed it to the defendant in trust upon condition that it would employ one hundred skilled workmen continuously for five years, but that it had not employed over half that number. The case also shows that by reason of the buildings and other improvements, constructed by defendant, the premises are worth more than $30,000, and the petition asks for a forfeiture, of "the premises" to a trustee to be appointed by the court; that only seventeen of the three hundred and twenty subscribers to the fund joined as plaintiffs, who claimed to sue for themselves and the other subscribers. Considering that the contract has been faithfully performed in every other respect except as to the number of laborers employed; that the subscribers have, through the general benefits to the community, received a large part of the benefits which induced their subscriptions; that the trustee, who presumably represents the majority of the subscribers, refuses to join in asking relief; that those not joining may be satisfied with the result of the enterprise and may wish the business to continue; and that a granting of the prayer would destroy a business valuable to defendant and beneficial to the community, the court *holds* that the trial judge did not abuse his discretion in refusing to declare a forfeiture on the ground of a failure to perform the conditions of the grant.

4. **Parties to Action.** Whether a part of the subscribers to a fund to build and operate a factory can sue for the other subscribers in a suit in equity, asking for a forfeiture of the grant and a reconveyance of the property donated, is doubted, but is not decided in this case.

*Appeal from Greene Circuit Court.*—Hon. James T. Neville, Judge.

Affirmed.

*White & McCammon* for appellants.

(1) The plaintiffs brought the proper action in this case and sought proper remedy. *Lilly v. Tobbein,* 103 Mo. 488; *Michael v. St. Louis,* 112 Mo. 610; *Newmeyer v. Railroad,* 52 Mo. 81. (2) Ejectment could not be maintained in this case because it is not a conditional estate. *Messersmith v. Messersmith,* 22 Mo. 369; *O'Brien v. Wagner,* 94 Mo. 96. (3) It has always been held that equity will enforce the specific performance of covenants similar to this. Waterman on Spec. Perf. [1881 Ed.], secs. 10, 11, 21, 29, 30, 110, 115; *Grubbs v. Sharkey,* 20 S. E. Rep. 784; *Zipp v. Walker,* 40 N. Y. S. 325; *White v. University L. Co.,* 49 Mo. App. 450; *Cook v. Bartholomew,* 22 Atl. 444; *Clark v. Brookfield,* 81 Mo. 503. (4) There is no principle of equity or law which permits a party to escape the obligations of a contract on the grounds that he has done something else that is not required by the contract or which may have been incidentally necessary from the performance of it. (5) It is evident throughout the record that it never was the intention to carry on a permanent factory, but that from the start Baldwin intended it as a real estate deal. (6) The trial judge could not have taken into consideration the permanent improvements to the real estate, and if he did it was not proper to do so, because the only improvements to the real estate was the moulding room, costing about $9,000, and it was entirely finished when the contract was entered and is mentioned in the contract

as being already performed, so that the conditions upon which the reconveyance should be made depended entirely upon the number of workmen employed. (7) It can not be said that there was an approach to a substantial compliance with the terms of the contract. The contract provided for fifty moulders continuously and the average was less than one half, and part of the time only on one half time. It provided for a force of one hundred workmen of all grades, and the average must have been less than forty. *Sult v. Waran*, 38 N. E. Rep. 291.

*T. K. Skinker* and *C. R. Skinker* for respondents.

(1) This is an attempt to enforce a forfeiture, not only of the land conveyed to defendant company, but also of very valuable improvements put on it by the company. Courts of equity do not enforce forfeitures, but leave parties to their remedies at law. *Messersmith v. Messersmith*, 22 Mo. 369; *Towne v. Bowers*, 81 Mo. 497; 1 Pomeroy, Eq. Jur., sec. 459; *Railroad v. Railroad*, 57 Pa. St. 65. (2) The seventeen plaintiffs are not entitled to sue for the three hundred and twenty subscribers. Story, Eq. Plead. [10 Ed.], secs. 94, 96; *Jones v. Garcia Del Rio*, 1 Turn. & Rus. 297; *Attorney-General v. Heelis*, 2 Sim. & Stu. 76; 1 Dan. Ch. Prac. [6 Am. Ed.] 238, side p. 243; *Bainbridge v. Burton*, 2 Beav. 539; *Kerrison v. Stewart*, 93 U. S. 155; *Jewett v. Tucker*, 139 Mass. 577. (3) As an attempt to enforce specific performance of a contract, this suit was properly dismissed. The exercise of this jurisdiction always rests largely in the sound discretion of the court, and that discretion was wisely exercised in this instance. *Veth v. Gierth*, 92 Mo. 97; 3 Pomeroy, Eq. Jur., sec. 1404.

MACFARLANE, J.—The petition states that in the year 1890 plaintiffs, who are seventeen in number, and about three hundred other citizens of the city of Springfield, purchased, at a cost of $15,000, and caused to be conveyed to defendant corporation, a tract of land in said city for the purpose of inducing it to establish, maintain and operate a stove factory thereon. That in consideration thereof, on the eighteenth day of July, 1890, said defendant executed and delivered to one B. U. Massey, as trustee for the said citizens, a written agreement which is as follows:

"This agreement, made and entered into this 18th day of July, 1890, by and between the Cleveland Cooperative Stove & Hollow Ware Foundry Company, a corporation organized under and by virtue of the laws of the State of Ohio, and located at the city of Cleveland, in said State, party of the first part, and Benj. U. Massey, of the second part, as trustee for the subscribers to a fund, raised and applied to the purchase of the real estate hereinafter described, purchased by said subscribers for, and deeded to, said party of the first part, *witnesseth:* that *whereas*, certain citizens of the city of Springfield, Greene county, Missouri, have heretofore entered into an agreement, to and with each other, in writing, to subscribe and pay the respective amounts set opposite their names in said writing, for the purpose of buying the following described real estate situated in the city of Springfield, Greene county, Missouri, and conveying same to said parties of the first part, viz., beginning at the southwest corner of the southeast quarter of section 13, township 29, range 22, thence east twenty-seven poles and twenty-one links; thence north twenty-five poles, thence west twenty-seven poles and twenty-one links; thence south twenty-three poles, to beginning, except rightway of Gulf Railroad in Springfield, Greene county, Missouri; which said sub-

scription, upon the delivery of this agreement, has been duly paid, and said property has been purchased and conveyed to said party of the first part, and now as consideration for said property paid, done, to be done and performed by said party of the first part, the said parties of the first part have at the delivery of this agreement erected on said parcels of ground a building of the dimension of one hundred by two hundred feet, one story high, to be used as a moulding room, and have repaired and remodeled the buildings which were already on said premises, and have placed in said buildings the machinery and fixtures needed to fit up said property as a foundry, for the manufacture of stoves, ranges, hollow ware and metal castings, and have agreed to and with the said subscribers to maintain and operate said plant for a period of five years from this date. *Now* this agreement is that the said parties of the first part, for and in consideration of the conveyance to them of the property aforesaid, do hereby agree to and with the said Massey, as trustee as aforesaid, party of the second part, that they will operate and maintain upon said premises a foundry for the manufacture of stoves, ranges, hollow ware and metal castings, for the period of five years from this date, for a capacity for employing and keeping at work continuously at said premises and in said business a force of not less than an average number of one hundred skilled and other laborers necessary to sustain a force of not less than fifty moulders, said moulders to be considered a part of the one hundred and other skilled laborers, that they will employ and retain that number of men as soon as they can be obtained and retained, at the prevailing rate of wages throughout the country for that class of laborers, and that they will conduct said business in a good and business like manner during that period. It is not intended that providential hindrances of any

kind, of labor strikes or stoppages of any kind, the causes of which are not brought about directly by said party of the first part, and not intended as a permanent shutting down and stopping of said business, shall be considered as a failure to continuously operate said plant.   The intention of this agreement is, that said parties of the first part shall manage and conduct said business at said premises as business of a similar character elsewhere is usually managed and conducted by active and prudent business men.   If said party of the first part, their associates or assigns, shall fail to maintain and operate said manufacturing establishment at and upon said premises herein described, for said period of five years, in the manner herein set forth and required, or shall at any time during that period abandon said business, either voluntarily or by reason of financial disaster, or from any other cause, then upon the happening of such an event this agreement is that said parties of the first part shall reconvey the property described to the said Massey as trustee, for the use and benefit of said subscribers whose names and the amounts subscribed by each subscriber bears to the value of the whole property, and said property, if reconveyed to said Massey, trustee, shall be disposed of by him in such manner as a majority in interest of said subscribers shall direct. No conveyances or disposition of said property during said period of five years, by said party of the first part, shall discharge said property from the obligations and reversions and charges imposed by this agreement.   If said parties of the first part, their associates or assigns, shall do and perform on their part all that is in this agreement required of them to do and perform, for the said period of five years as herein set forth, then at the expiration of said period this agreement shall cease and determine, and said property shall revest absolutely in said parties of

the first part, discharged of all conditions, limitations and reversions herein imposed. It is understood by the parties hereto that in no event are the patterns or other personal chattels of said parties of the first part to be conveyed to said Massey, trustee, but only the realty herein described, and that only upon the occurrence of any of the events above mentioned.''

The petition charges that said defendant corporation wholly failed to keep and perform the agreement and never at any time employed and retained one hundred skilled and other laborers upon said premises, nor fifty moulders, though that number might easily have been employed and retained, and that it wholly failed to maintain and operate the business of manufacturing according to the terms of the agreement. It is charged further that Massey, as trustee, refused to join as plaintiff in the suit, and that the other parties interested are too numerous to be made parties. The plaintiffs sue for themselves and all others similarly situated. The prayer is that the trustee be removed, and some suitable person be appointed to discharge the trusts imposed by said agreement. That the court declare said property and all interest and estate of said corporation forfeited to such trustee as the court may appoint for the use of plaintiffs and others interested. That the court order a specific performance of the covenants in said agreement mentioned, particularly the covenant to convey said premises to said trustee on the failure of said corporation to conduct the manufacturing business in the manner stipulated.

Massey, the trustee, and the corporation, are made defendants, and answer by general denial.

After a hearing plaintiffs' bill was dismissed, and they appeal.

The evidence shows that plaintiffs and the other subscribers, about three hundred in number, purchased

at a cost of $15,000 and had conveyed to defendant corporation the tract of land in question. The deeds were dated April 5, 1890. The corporation at once took possession of the land and erected thereon new buildings appropriate to the manufacture of stoves and repaired the old buildings. In building, repairing and placing machinery, it expended about $15,000. The factory, when completed, possessed the capacity required by the contract. It promptly engaged in the manufacture of stoves and continued thereat until this suit was commenced, in July, 1894, and so far as appears to the contrary, until the end of the time agreed upon. The uncontradicted evidence shows that defendant, prior to commencing the suit, did not at any time employ as many as one hundred laborers or fifty moulders in the business; indeed, the weight of the evidence shows that, on an average, not more than one half of that number was kept employed, and for some months they only worked on half time.

The evidence of defendants tends to prove that it was impossible, at that place, to secure competent and skilled moulders, though they made extraordinary efforts to do so. Weighing all the evidence, we reach the conclusion of fact, however, that defendant did not perform the contract as fully, in respect to the number of laborers to be employed, as it might have done, and there was consequently a breach of the agreement in that respect.

It appears from the evidence further that certain citizens of Springfield, numbering three hundred and twenty, subscribed, severally, sums aggregating $15,000, and purchased the property in order to induce defendant corporation to establish, maintain and operate in said city a stove foundry. The general benefit of such an enterprise to the community and the subscribers was the inducement for the subscriptions.

The business was conducted for about four years by defendant, according to the agreement in all respects except in the matter of the number of laborers employed. For this default seventeen of the subscribers, for themselves and assuming to act for the others, ask to have the property conveyed to a trustee to be held for the use of all the subscribers.

It may well be doubted whether this is a character of case in which a few interested parties may sue for themselves and others similarly situated. We may fairly assume that Massey, the trustee, and the great majority of the subscribers who do not join in the suit, are not so dissatisfied with the conduct of the business of the corporation as to be willing to put a stop to it altogether, as plaintiffs' suit attempts to do. They may think the relief asked would be detrimental to their interests and the interests of the community, which they intended to promote.

But passing that question, we are of the opinion that plaintiffs have not made out a case which authorizes a court of equity to grant the relief demanded.

One of the special prayers is that "said premises be forfeited to such trustee as the court may appoint." The forfeiture demanded is not only of the land the subscribers caused to be conveyed to the corporation, but of the valuable and costly improvements the company has put upon it. To this demand it is sufficient to say that courts of equity never lend their aid to the enforcement of forfeitures. *Messersmith v. Messersmith*, 22 Mo. 369; *Towne v. Bowers*, 81 Mo. 491; 1 Pomeroy, Eq., sec. 459.

Nor do we think plaintiff entitled to relief on the theory that the suit is for the specific performance of the contract. "The specific execution of a contract is in equity a matter not of absolute right in the

party, but of sound discretion in the court." *Veth v. Gierth*, 92 Mo. 104; 2 Story, Eq., secs. 769, 770.

It is very clear that a decree for specific performance would be in effect an enforcement of a forfeiture for the non-performance of the contract. In the exercise of its discretion a court of equity should not do indirectly what it would decline to do directly.

But to enforce this agreement would take from defendant property worth double what it cost the subscribers and made so by the improvements defendant put upon it. It would also have the effect of destroying a business valuable to defendant and beneficial to the community. Moreover, the contract has been faithfully performed by defendant in every particular except as to the number of laborers employed. The subscribers have therefore received a large part of the benefits which induced their subscriptions. The trustee, who presumably represents the majority of subscribers, refuses to join in asking the relief. Those not joining in the suit may be perfectly satisfied with the result of the enterprise, and may wish the business to continue. Considering these facts, we are of the opinion that the circuit court exercised its discretion soundly in refusing relief, and its judgment is affirmed. All the judges of this division concur.