WEISS v. CLABORN et al.　(No. 9208.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 24, 1920. Rehearing Denied March 6, 1920.)

1. MINES AND MINERALS ☜75—LEASE MAY BE CANCELLED WHERE LESSEE FAILS TO EXERCISE OPTION TO RENEW WITHIN TIME SPECIFIED.

Under oil lease providing that, if operations for drilling of well were not commenced on or before a certain day, the lease should terminate, unless lessee on or before such day should pay or tender a specified amount, which payment should operate as a renewal, time was of the essence of the option to continue lease; and where defendant, lessee's assignee, did not pay specified amount until two days after option had expired, lessors, who declined to receive the amount were entitled to decree canceling lease and removing same as a cloud on their title, though they were not damaged by delay of two days and failed to declare a forfeiture prior to deposit.

2. VENDOR AND PURCHASER ☜18(4)—TIME BEING OF ESSENCE, FORFEITURE FOR FAILURE TO EXERCISE OPTION NOT RELIEVABLE IN EQUITY.

Time is of the essence of an option contract to purchase property, especially where the property is fluctuating in value, and equity will not relieve against a threatened forfeiture for failure to exercise the option within the time specified.

3. DEEDS ☜145 — CONSTRUCTION AS COVENANT RATHER THAN CONDITION SUBSEQUENT.

When it is doubtful whether a conveyance is made on a condition subsequent or on the covenant of the grantee, the latter interpretation will be adopted.

4. MINES AND MINERALS ☜79(6)—FAILURE TO PAY RENT NOT CONDITION PRECEDENT TO FORFEITURE.

If failure to pay rental operated to terminate oil lease, it was not a condition precedent to right of lessors to claim forfeiture to notify lessee of such claim before the rental was deposited in the bank to the lessors' credit.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Action by C. L. Claborn and others against Harry C. Weiss. Judgment for plaintiffs, and defendant appeals. Affirmed.

Oliver J. Todd and W. G. Reeves, both of Beaumont, for appellant.

J. R. Stubblefield, of Eastland, for appellees.

DUNKLIN, J. C. L. Claborn and J. W. Claborn executed and delivered to L. C. Heydrick what is usually termed an oil and gas lease on 205 acres of land in Eastland county. The instrument contained a stipulation giving Heydrick the privilege of assigning the lease, or any part thereof, and subrogating such assignee to the same rights as conveyed

---

to Heydrick to the portions so assigned. Heydrick assigned to Harry C. Weiss the lease on 80 acres of the land covered by the lease. C. L. Claborn and J. W. Claborn, the lessors, instituted this suit against Weiss to cancel the lease upon said 80 acres, and from a judgment in favor of the plaintiffs the defendant has appealed.

The following are some of the stipulations contained in the lease:.

### "Oil and Gas Lease.

"This agreement entered into on the 19th day of October, 1917, between C. L. Claborn and wife, Emma Claborn, and J. W. Claborn and wife, Lula Claborn, party or parties of the first part, hereinafter called 'lessor,' and L. C. Heydrick, party of the second part, hereinafter called 'lessee,' witnesseth: That the lessor, in consideration of fifty-one and $25/100$ dollars ($51.25) in hand paid by the lessee, and other valuable considerations, receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained, hereby grants, bargains, and sells all the oil and gas in and under the land hereinafter described, and grants, demises, leases, and lets said land itself unto the lessee, his heirs and assigns, for the sole and only purpose of operating for and producing oil and gas, thereon and therefrom, together with the rights of way and servitude for pipe lines, telephone and telegraph lines, for tanks, power houses, stations, and fixtures, for producing and carrying such products and housing and boarding employés, and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring lands, for oil and gas, with the right to use free oil, gas, or water. * * * To have and to hold said lands, and all rights and privileges granted hereunder, to and unto the lessee, his heirs and assigns, for the term of five (5) years from the date hereof, and as much longer as oil, gas, or either of them shall be produced from said lands by lessee in paying quantities.

"And for the consideration aforesaid, lessor, for himself, his heirs, executors, and administrators, hereby covenants to and with the lessee, his heirs and assigns, that the lessor is lawfully seized in fee simple of the above-described land, and that the lessor has full right to grant this lease according to the terms hereof, and that the lessee, his heirs and assigns, shall, for the full term of this lease, to wit, for the term of five (5) years, and as long thereafter as oil, gas, or either of them shall be produced from said land in paying quantities, peaceably and quietly have, occupy, possess, and enjoy all of said land and every part thereof for the purposes herein set forth.

"In consideration of the premises. the lessee further covenants and agrees:

"First. To deliver to the credit of the lessor, free of cost, in the pipe line to which it may connect its wells, the equal one-eighth ($1/8$) part of all oil produced and saved from the leased premises as royalty, or, at lessee's election, to pay the lessor for such royalty the market price prevailing the day the oil is run into the pipe line or run into storage tanks, in which last event settlement and payment shall be made by the lessee on the 15th day of each month for the royalty so purchased by the lessee during the preceding month.

"Second. To pay to the lessor two hundred dollars ($200.00) each year in advance, for the gas from each well where gas only shall be found, when the same is used off the premises, the lessor to have gas free of cost from any such well for all stoves and inside lights in the principal dwelling house on said land, by making his own connections with the well, the use of such free gas to be at lessor's sole risk and expense at all times; to pay lessor for gas produced from oil wells, when such gas is used or sold off the premises, at the rate of $10 per annum for each well while the gas is being used or sold, and when such gas is used for the manufacture of gasoline or any other product there shall be an additional payment at the rate of $15 per annum for each well while such gas is being so used for the manufacture of gasoline or any other product; said payments to be made each three months in advance.

"Third. If operations for drilling of a well are not commenced on said land on or before the 19th day of October, 1918, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender the lessor the sum of twelve and $81/100$ ($12.81) dollars in the manner hereinafter provided, which payment or tender shall operate as a rental for three months from and after the date last above stated, and same shall also cover the rights and privilege in the lessee to defer the commencing of said well during said period of months. In like manner, and upon like payments or tenders, the commencement of a well may be further deferred for a like period of the same number of months, successively, during the entire five-year term of this lease. Lessor expressly declares that the down payment or bonus received by him for this lease at the time of the execution hereof, is a good, valid, and substantial consideration, and sufficient in all respects to support each and every covenant contained herein, including specifically the options granted the lessee to extend this lease from time to time during the five-year term thereof upon the payment or tender of the rental hereinbefore provided for. Lessee agrees to immediately offset all paying oil or gas wells drilled on lands adjoining this tract, and it is expressly agreed that no implied covenants, regarding the measure of diligence to be exercised by lessee in the drilling of said lands, during the original five-year term hereof, shall be read into this lease; it being the express agreement of the party that the provisions of this paragraph set forth the exclusive conditions under which the lessee can hold this lease for the original term of five years. * * *

"Fifth. All rentals due hereunder shall be paid by lessee check mailed, postage prepaid to lessor at Okra, Texas, or to the bank of Carbon, Texas, for lessor's credit on or before the date any such rentals shall become payable; said bank by power irrevocable is hereby made the agent and lessor to accept all rentals paid hereunder, and same shall continue as the depository of such rentals during the life of this lease regardless of changes in the ownership of said land or said rentals. No change in the ownership of said land or the rentals or royalties due

hereunder shall affect or bind the lessee, until such purchaser shall have furnished the lessee an abstract of title to such land, certified to date showing as a part thereof the title claimed by such purchaser.

"Sixth. Should the lessee drill a dry hole on said land, then at the next succeeding rental-paying date the lessee shall resume payment of rentals due hereunder; otherwise this lease shall terminate as to both parties."

The proof showed that no drilling operations have ever been started on any part of the 205 acres leased to Heydrick. It was further shown that all installments of rentals mentioned in the lease were paid up to October 1, 1919, but that the defendant failed to pay to plaintiff or to deposit to his credit in the First State Bank of Carbon, Texas, or to mail to plaintiffs a check for the rentals for the three months beginning October 19, 1919, as he was required by the terms of the lease to do in order to extend it for that period.

[1] The failure to begin drilling operations, and the failure of defendant to pay said rentals on October 19, 1919, was alleged in plaintiffs' petition as a basis for the decree prayed for, canceling the lease, and removing the same as a cloud upon plaintiffs' title. But the proof further showed, without controversy, that the rentals upon the 80 acres in controversy for the entire year beginning from October 19, 1919, were deposited in the bank named to plaintiffs' credit on October 21, 1919, two days after its due date, which deposit plaintiffs refused to accept, because it came too late, and by reason of such delay plaintiffs claimed that the lease had terminated. The proof showed further that on October 18, 1919, defendant was engaged in conducting a campaign for the sale of Liberty Bonds in Jefferson county, Tex., and on that date his agent, R. S. Sterling, at Houston, wired to R. L. Blaffer, at Ranger, Tex., instructions to deposit to plaintiffs' credit in the bank designated in the lease the sum of $20 to cover the rentals for the 80 acres for one year, and on the same date wrote to said Blaffer the same instructions, referring to the telegram that had already been sent. That letter was sent by special delivery, but neither it nor the telegram reached Blaffer in time for him to make the deposit on October 19th, which was on Saturday, but in compliance with the instructions so given Blaffer did make the deposit in the bank on October 21st, which was the earliest date he could make it after receipt of the instructions. In addition to that proof, the trial judge found, as shown by his findings of facts filed, that at the time of such deposit plaintiffs had not exercised their option to declare a forfeiture of the lease, and that they were not damaged in any sum by defendant's failure to pay the rentals on October 19, 1919, and the correctness of those findings have not been challenged by the appellees; in fact, they have filed no briefs or cross-assignments in this court.

Appellant insists that a court of equity may lend its aid to prevent a forfeiture, but will not enforce a forfeiture or divest an estate for breach of a condition subsequent, and that since plaintiffs' suit was for the equitable relief of forfeiture and cancellation of the lease as a cloud upon their title, the judgment of the trial court was erroneous. The following is cited from Moberly v. City of Trenton, 181 Mo. 637, 81 S. W. 169:

"The very able argument of the counsel is mainly addressed to the purpose of showing that this was a conveyance on condition subsequent, and that it should have been declared forfeited. If the counsel are right in their conception of their case, then the chancellor would have been justified in dismissing the first count in the petition on its own showing, because a court of equity never declares a forfeiture. When it interferes at all in a case of forfeiture, it is only to relieve against it, never to aid it. In Pomeroy's Eq. Juris. § 459, it is said: 'It is a well-settled and familiar doctrine that a court of equity will not interfere in behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture.' And in the next section it is said: 'There are in fact no exceptions to this doctrine. Those which appear to be so are not so in fact.' The doctrine is thus stated by Story: 'It is a universal rule in equity never to enforce either a penalty or a forfeiture. Therefore courts of equity will never aid in the divesting of an estate for a breach of a covenant on a condition subsequent, although they will often interfere to prevent the divesting of an estate for a breach of a covenant on condition.' 2 Story, Eq. Jur. (13th Ed.) p. 652. Chancellor Kent has said: 'It appears to be contrary to the uniform course of the court and its established principles to aid in the divesting of an estate for breach of a condition subsequent.' Then, after stating the rule in equity relating to relieving against a forfeiture, the chancellor added: 'It may be laid down as a fundamental doctrine of the court that equity does not assist the recovery of a penalty or forfeiture, or anything in the nature of a forfeiture.' Livingston v. Tompkins, 4 Johns. Ch. 415, loc. cit. 430, 431, 8 Am. Dec. 598. And that has been the doctrine of this court from the first. Messersmith v. Messersmith, 22 Mo. 369; Towne v. Bowers, 81 Mo. 491; Sease v. Cleveland F. Co., 141 Mo. 488, 42 S. W. 1084. Whatever the evidence, therefore, may have been, the plaintiff was entitled to no relief under the first count in her petition."

And many authorities to a like effect are also cited, such as Berryman v. Schumaker, 67 Tex. 312, 3 S. W. 46; Breckenridge v. Neill, 26 Tex. 105; Shepard v. Avery, 89 Tex. 301, 34 S. W. 442; Thornton on Oil and Gas, § 888; Livingston v. Tompkins, 4 Johns. Ch. 415; 8 Am. Dec. 604; Horsburg v. Baker, 1 Pet. 232, 7 L. Ed. 125; Tarr v. Stearman, 264 Ill. 110, 105 N. E. 960.

While those authorities announce principles which control in suits in equity as distinct from actions at law, none of them go so far as to hold that the cancellation of a contract cannot be decreed in an action at law, when the contract itself gives the right to declare it terminated, and there is an absence of any showing of special facts which would render it a violation of good conscience to grant that relief. In 1 Pomeroy's Equity Jurisprudence, § 455, the following is said:

"It is well settled that where the parties have so stipulated as to make the time of payment the essence of the contract, within the view of equity as well as of the law, a court of equity cannot relieve a vendee who has made default."

Plaintiff's suit was a suit for a judgment declaring that, by its terms and under the facts alleged and found by the trial court, the lease has terminated and is no longer in effect; the necessity for such a decree to remove the lease as a cloud upon plaintiffs' title, arising from the fact that the deed records of the county in which the land is located shows this lease, and does not show that it has ceased to be effective.

As shown by the stipulations in the lease quoted above, the lessee did not contract and agree to drill a well, nor to pay rentals, and therefore it clearly appears that the stipulations with reference to drilling a well and payment of rentals are conditions for the termination or continuation of the lease term, and not covenants of the lessee; and it is a familiar rule that, in the absence of some equitable defense, such as waiver or estoppel, as against the vendor, "the consequences of the nonfulfillment of a condition is a forfeiture of the estate." 8 R. C. L. p. 1101; Kennedy v. Embry, 72 Tex. 389, 10 S. W. 88; Buckingham v. Thompson, 135 S. W. 652; Grubb v. McAfee (Sup.) 212 S. W. 464; Teague v. Teague, 22 Tex. Civ. App. 443, 54 S. W. 632; Jeffery v. Graham, 61 Tex. 481; 18 C. J. 375.

The instrument plainly shows that it was made optional with the lessee to start a well, and also optional with him to pay rentals on or before the expiration of each year, and thereby to extend the lease for another year, and those stipulations are designated in the lease itself as "the exclusive conditions under which the lessee can hold this lease for the original term of five years." That stipulation, of itself, would exclude the contention now urged that appellant should be accorded the right to exercise the option to extend the lease another year, in violation of other provisions in the instrument as to the time within which rentals must be paid in order to secure such extension.

[2] Further still, it is a familiar rule that time is of the essence of an option contract to purchase property, especially where the property is fluctuating in value, and that equity will not relieve against a threatened forfeiture for failure to exercise the option within the time specified. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; Washington v. Rosario M. & M. Co., 28 Tex. Civ. App. 430, 67 S. W. 459; Trogden v. Williams, 144 N. C. 192, 56 S. E. 865, 10 L. R. A. (N. S.) 869; Thornton on Oil and Gas (2d Ed.) §§ 72 and 148; 39 Cyc. 124. See, also, Slater v. Emerson, 19 How. 224, 15 L. Ed. 626. And under that rule, also, independent of the stipulation in the lease last quoted, appellant showed no right to extend the lease for another term of three months by tendering the rental two days after the expiration of the period within which he had the option to pay same.

In the case of Clemenger v. Flesher, 185 S. W. 304, in consideration for an oil lease, the lessee contracted and agreed to either drill a well or pay rentals, and this court held that the lessor could elect to either cancel the lease or sue for the rentals which the lessee contracted to pay, and, the lessor having elected to sue for the rental contracted to be paid, a judgment in his favor therefor was affirmed. That case is clearly distinguishable from the present case, in which neither the drilling of a well nor the payment of rentals was obligatory upon the lessee.

[3] In the case of McKean Natural Gas Co. v. Wolcott, 254 Pa. 323, 98 Atl. 955, cited by appellant, the Supreme Court of Pennsylvania affirmed a judgment of the trial court denying a forfeiture of an oil and gas lease; the right of forfeiture sought by plaintiff in the suit being based upon nonpayment of the sum of $300 annually, which the lessee had contracted to pay if he did not drill six wells within a stated period of time. The lease contained a further provision that failure to make said annual payments would render the lease absolutely void. In the course of the opinion, it was said that the court could see no vital difference between that lease and one for agricultural or other like purposes, and the rules obtaining in leases of the latter character were given controlling effect in that case. But that case, like that of Clemenger v. Flesher, supra, is distinguishable from the present suit, in that the lessee contracted and agreed to pay the rental of $300 per year if the wells were not drilled. And according to the general rule, when it is doubtful whether or not a conveyance is made upon a condition subsequent or upon the covenant of the grantee, the latter interpretation will be adopted. 8 R. C. L. p. 1101.

Nor are we prepared to concur in the ruling that the rules governing ordinary rental contracts between landlord and tenant control such leases as the one now in question, since, generally, the only consideration moving a landlord to lease a house or farm is the expected rental, while it is plainly apparent that the main purpose of plaintiffs in this suit in giving the lease in controversy was to secure the drilling of oil wells upon the land,

and from them to realize profits by way of royalties far in excess of the trifling sum of $51.25, the agreed annual rentals to be paid for an extension of the lease upon the entire tract of 205 acres without a well.

Since time was of the essence of the option contract to continue the lease in force from year to year by paying the stipulated rents, and since plaintiffs' suit was for a judgment declaring the lease terminated in accordance with the terms of the contract, and thus to enforce the contract, and was not a suit to rescind it on equitable grounds, it becomes immaterial that plaintiffs were not damaged by the delay of two days in the payment of the rental tendered, especially in view of the allegation in defendant's answer that the lease was far more valuable then, and had at that time a still greater prospective value than when it was executed. 39 Cyc. 1565. And for the same reason it was immaterial that the delay in making the deposit of rental was unintentional, and not due to the negligence of defendant, or that plaintiffs failed to declare a forfeiture of the lease prior to the deposit of the rental in the bank.

[4] If the failure to pay the rental operated to terminate the lease, it was not a condition precedent to the right of the lessor to claim the forfeiture to notify appellant of such claim before the rental was deposited in the bank to the lessor's credit. Bounds v. Hickerson, 26 Tex. Civ. App. 608, 63 S. W. 887; Weatherford Machine & Foundry Co. v. Tate, 49 Tex. Civ. App. 392, 109 S. W. 406.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.