## T. O. Henderson and Alexander Adams *v.* Thomas Ferrell, William Crispin, John Welsh, ——— Reddick, George Gillmor and Forest Oil Company, Appellants.

*Lease—Oil and gas lease—Abandonment—Forfeiture—Evidence—Province of court and jury.*

In an action of ejectment by the lessee in an oil and gas lease to recover possession of the oil and gas, where it appears that operations were to be begun on the leased premises within 30 days from the date of the lease, the case is for the jury where the evidence for the lessee, although contradicted, tends to show that he drove a stake on the premises upon the afternoon of the 30th day, and began unloading lumber upon the land with the bona fide intention of sinking a well, and that he was prevented from so doing by the action of the lessor in driving his employees from the premises, and that the delay in beginning operations sooner was caused by inability to secure the materials, machinery and labor necessary for the proper performance of the work. The lessee did not forfeit his rights if he in good faith, on the last day, commenced operations preparatory to drilling a well.

Argued Oct. 18, 1897. Appeal, No. 41, Oct. T., 1897, by defendants, from judgment of C. P. Washington Co., August Term, 1896, No. 22, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for oil and gas under a tract of land in Cecil township. Before McILVAINE, P. J.

The facts appear by the opinion of the Supreme Court and part of the charge of the court below which is as follows :

It appears that on February 4, 1896, Albert Behling, the owner of this lot of ground, made a lease to Alex. Adams. The lease sets forth that it is made for the purpose and with the exclusive right of drilling and operating for petroleum and gas, and it sets forth further that the lessee, Alex. Adams, is to commence operations on the premises within thirty days from the date of the lease, and that if he fails to commence operations within that time that the lease shall be null and void. . . .

Now, the next thing that I wish to call your attention to is, that Albert Behling, the owner of this lot of ground, on-

March 26, 1896,—about fifty days after the first lease was exe-
cuted,—executed another lease to Adam A. Welsh, giving him
the exclusive right of drilling and operating for petroleum oil
and gas; in other words, gave him the same right in the tract of
land that he had previously granted to Alex. Adams. . . .

On or about June 1, 1896, George Gillmor and other parties,
being in possession of this lot and having drilled a well to the
oil producing sand thereon, as assignees of the lessee named in
the Welsh lease, Alex. Adams and T. O. Henderson, to whom
he had assigned half of his lease brought this action of eject-
ment. . . .

Now, there is no dispute, as we have already intimated, about
Mr. Behling executing the lease to Mr. Adams, but the ques-
tion turns, as we take it, upon whether or not Mr. Adams and
Mr. Henderson (to whom he had previously assigned a half
interest in the lease) performed the covenant that required
them to commence operations on the premises within thirty
days; because if they did not, the moment that the clock struck
the hour that completed the expiration of the thirty days they
were given to commence by the terms of the lease, their rights
were gone, and on June 1, or when this suit was brought,
they would not have any rights of any kind in that acre of
ground. Now, the plaintiffs claim that they did perform that
covenant and did commence operations, and that therefore the
rights that were given them under the other covenants in this
lease were not forfeited, but still belong to them. The defend-
ants deny this.

[Now, the plaintiffs rely upon certain acts that they allege
were done under this lease by them to establish the claim that
they commenced operations, while the defendants insist that
what the plaintiffs did does not constitute a commencement
of operations. Now, you must take into consideration, in de-
ciding that question, not only what was done on March 5,
1896, (which is the day on which the plaintiffs allege they did
these acts and commenced operations) I say you may not only
take into consideration what was done at that time, but you can
take into consideration the conduct and acts of the parties pre-
vious to that time, (and after the lease was executed), and what
they may have done after March 5, up to the time suit was
brought, and also what they failed to do, in order to deter-

mine the effect that must be given to the acts done on that day. The commencement of operations, or the commencement of anything, of course, might be a very trivial act. It has to be, because everything, be it ever so great, is accomplished by doing little things one after the other, and the commencement of the drilling of a well may be made by doing an act insignificant in itself. The commencement of the buildings for the World's Exposition, perhaps, was the striking of a pick into the ground. But whether any given act is a commencement or not depends on circumstances. So in commencing operations in the drilling of a well, a very little thing may be the commencement, while acts more extended might not be. You must take all the circumstances into consideration, all the surroundings, to determine the character and effect of the act. Now, if the plaintiffs, Adams and Henderson, went upon this lot on March 5, (which was the last of the thirty days) and in good faith staked out a location for a well, showing where they wished to erect their derrick, and ordered lumber and had some of it put upon the lot, with the intention of proceeding with the work on the next day and continuously thereafter to the completion of a well, then locating the well on the ground and driving the stake and hauling the first load of lumber and delivering it upon the lot, in our opinion, would be a commencement.] [3] But the defendants claim here that what was done was not done in good faith; that it was, to use a slang expression, "a bluff;" that it was not followed up; that they didn't do anything between that time and the time this suit was brought, nor between that time and the time the second lease was made; that they abandoned the prosecution of the work. Well now, if that is true, then it was not a commencement to drill a well,—it was simply putting a stake in the ground and putting some lumber there for the purpose of pretending to commence a well, and it would not be a compliance with the terms of the lease. It would be an act that is like and similar to commencing a well, but an act done in bad faith, and would not have the effect that it would have had if it had been followed up and the well completed. [Now, that brings us to another important question in this case. The plaintiffs explain this failure to do more by saying that it was the fault of Mr. Behling; that they didn't do anything more, but that they did what was done in good faith, and that

the reason that they did not proceed on the morning of March 6, to complete the derrick and to drill the well, and the reason they did nothing more before the second lease was made and the defendants went into possession was because Mr. Behling would not let them, but stopped and prevented them from going on and completing the well. Now, gentlemen, if that was so that would excuse any further performance. If you believe what has preceded that was done in good faith and the plaintiffs were actually interfered with and prevented from doing more by Mr. Behling, and this before the thirty days were entirely expired, then they would not be responsible for not doing more. This is an important matter for your consideration.] [4] What transpired there on March 5, when Mr. Reed brought the lumber, and what did the parties do or fail to do at that time, —that is, Mr. Henderson and Mr. Adams? Did Mr. Behling simply talk to these people, as the defendants here argue, about being mistaken as to the lot, and about not putting the lumber there? Was that all that he did? And then did Adams and Henderson take advantage of what he said as an excuse to stop doing anything further? Did they make what he said an excuse for stopping when really they wanted to stop? Was there such opposition on the part of Mr. Behling that it was a fair and reasonable thing for Adams and Henderson to do to abandon the work and not go back there the next morning or have their men go? Were there such things done there as to prevent them going on safely with this enterprise? If there was, why then it is not in Mr. Behling's province to say they didn't go on,—that what they did was not enough to make a commencement. If they did what they did there in good faith, intending to follow it up so as to drill the well to completion and get the oil and gas which was the primary object of Mr. Behling in making the lease, and they were actually stopped by Mr. Behling himself before the thirty days were up, then I say that Mr. Behling would not be in a position to set up that they had not gone on and supplemented what they had already done by finishing the well. On the other hand, if they did not put the lumber there in good faith, and merely made an excuse for not going on out of what conversation there was between Behling and Reed,—made that an excuse for not going on, and for stopping the further prosecution of the work, why then

what they did do would not be a commencement; it would be, as I said before, but a bluff or an attempt to make a display of commencing when they didn't intend to commence.

Now, gentlemen, we intend to leave that question entirely with you, and you will take into consideration these different things that have been testified to here by the witnesses in regard to this transaction, both before and after March 5, 1896, and take into consideration what happened there that day, and what was said in regard to the matter between the parties in interest, and then determine the two questions; first, was this staking out and indicating of the location,—going on the lot to indicate the location at which the well was to be drilled and the placing of the lumber upon the lot,—was that done in good faith with the intention of proceeding the next day with the work on to completion? And second, was Mr. Behling responsible for the stopping of the work; did he so interfere with what was done there that day as to justify Mr. Henderson and Adams in abandoning it the next morning, or did they take what was done there and what was said as an excuse to do what they intended to do already,—simply make an effort at commencement and then stop. Now, gentlemen, we leave the question with you. [If you believe, as I said before, that these men started this work in good faith, intending to follow it up and drill the well to completion, and that they were stopped by Mr. Behling who owned the land, then Mr. Behling would be responsible for their not going on, and they would be entitled to recover; for these defendants, taking under him, and taking only the title they got from him, stand on no higher ground than he would.] [5]

Defendant's points and answers thereto were as follows:

2. Inasmuch as the lease for oil and gas purposes, dated February 4, 1896, from Behling to Adams, was not followed by the taking of an actual and substantial possession of the land leased, by either Adams or his assignee Henderson, the verdict must be for the defendants. *Answer:* That is refused, subject to what we have said in our general charge. [6]

3. There being no legal evidence that the defendant, the Forest Oil Company, has at any time been in possession of the premises in dispute, there can be no verdict against the Forest Oil Company. *Answer:* That point is refused. That is, we

refuse to give you binding instructions. That is a question for the jury under the evidence, and we think there is enough evidence to submit that question to the jury. If this company by itself, or by its agents, were not in possession when this suit was brought, then the point is affirmed. [2]

4. On the whole case, the verdict must be for the defendants. *Answer:* Refused. [7]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (2–7) above instructions, quoting them.

*David Sterrett*, with him *R. W. Cummins* and *Charles C. Sterrett*, for appellants.—The plaintiff in order to recover in ejectment must establish the possession of defendant: McCanna v. Johnston, 19 Pa. 434; Helfenstein v. Leonard, 50 Pa. 461; McIntire v. Wing, 113 Pa. 67.

The right of forfeiture was distinctly reserved. It was the right and duty of the landlord to exercise the right promptly, and there was no equity in the plaintiffs to prevent the remedy of forfeiture in good conscience. There was no evidence of unlawful eviction or deforcement to submit to the jury.

The law is now well settled that such oil and gas lease as the one from Behling to Adams does not grant an estate in the land: Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173; Barnhart v. Lockwood, 152 Pa. 82; Venture v. Fretts, 152 Pa. 451; Sennett v. Bucher, 3 P. & W. 392.

*T. F. Birch*, with him *Andrew M. Linn*, for appellees.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1898:

On February 4, 1896, Albert Behling, being then the owner of the land in suit, leased the same to Alexander Adams "for the purpose and with the exclusive right of drilling and operating for petroleum and gas." By the terms of the lease the lessee was required to commence operations on the premises within thirty days from the date thereof, and on his failure to do so the lease was to be considered by the parties as "null and void." On February 24, 1896, Adams assigned a half interest in the lease to Henderson. Nothing was done on the premises by the lessees or by their direction, until the 5th of March, that

being the last day of the period allowed by the lease within which to commence operations. On that day Henderson drove a stake near the center of the lot to indicate the location of the proposed well and the point at which the lumber required in the performance of the work called for by the lease should be deposited. In the afternoon of the same day, and while an employee of the lessees was unloading some lumber upon the lot in accordance with their instructions, he was met by the lessor who denied that they had any right to put it there. The ground of the denial was that the time allowed for the commencement of operations expired in the forenoon of that day. The lessor was accompanied by a number of persons who appeared to be in accord with his manifest purpose to prevent the unloading of the lumber upon the lot, or the occupancy of it by the lessees or their workmen. The lessor's insistence that the lumber should not be deposited on the lot resulted in the unloading of the balance of it by the roadside, and in his removal from the lot of the lumber unloaded there. It may be stated in this connection that the stake driven by Henderson as above described had been taken up and carried away by the lessor or some member of his family before any lumber was unloaded upon the lot, and that the lessees were not present when the stake or lumber was removed, or when their employee was forbidden to deposit the lumber where they had directed him to.

The lessees had a clear right to enter and commence operations upon the lot on March 5, and if they did so in good faith, and with a purpose to continue the work in accordance with the provisions of the lease, the resistance of the lessor to their occupancy of the lot furnished no warrant for a forfeiture of the lease. This was the view that was taken of the lessor's action by the learned court below, and which the lessor contests on this appeal.

As the entry of the lessees upon the lot was before the time allowed for the commencement of operations under the lease had expired, it was prima facie at least a lawful entry, and the lessor's action was apparently an unlawful interference with it. It would seem therefore, that the burden was on him to show conduct on their part which justified his action. But the lessees did not rest their suit for the possession of the lot on a bare presumption. They alleged, and introduced evidence to prove,

that their entry was made in good faith, and with a determination on their part to prosecute with due diligence the work they were authorized by the lease to do. The evidence submitted by them showed the obstructions in the way of an earlier commencement of operations, and the efforts they made to secure the materials, machinery and labor necessary to the proper performance of the work. It also showed that when they commenced operations on the lot they intended and were prepared to continue them, and that their failure to do so was caused by the refusal of the lessor to allow them to proceed. It is true that the defendants introduced evidence inconsistent with and tending to discredit the evidence to which we have referred. But this would not have justified a peremptory instruction from the court to the jury to find for the defendants. Certainly the court could not say that the lessees had forfeited their right under the lease to enter and commence operations upon the lot when they did, or that their entry was a mere bluff, and that they did not intend to comply with the provisions of the lease. Whether they commenced operations in good faith, and whether they intended to proceed with due diligence, were questions for the jury, and so was the question whether their failure to continue them was caused by the action of the lessor. These questions were submitted to the jury in a clear and impartial charge, and the result was a verdict based on a finding of facts in accord with the lessee's contention. In other words, it is established by a verdict authorized by the evidence, that the lessees entered and commenced operations upon the lot in good faith, and that they were prevented from continuing them by the unlawful interference of their lessor.

The defendants claim under a lease from Behling to Adam A. Welsh, dated March 26, 1896. Welsh saw and examined the Adams' lease before he closed his contract with Behling and, according to the testimony of the latter was told by him about the occurrences on March 5, and that he would have to be responsible for the lease Adams had. On April 24, Welsh sold and assigned his interest in the lease of March 26 to Gillmor, who on the same day assigned a half interest in it to the Forest Oil Co. The defendants therefore have as against the plaintiffs the rights which Welsh acquired by his lease and nothing more.

We discover no error in the rulings complained of in the first and second assignments, or in the excerpts from the charge on which the third, fourth and fifth assignments were based, nor do we think that the defendants have any cause to complain of the answers to their second and fourth points.

We are clearly of the opinion that upon the facts established by the verdict the action of ejectment is maintainable.

The assignments are overruled and the judgment is affirmed.