## FAST v. WHITNEY. ·

(No. 918; Decided January 30, 1920; 187 Pac. 192.)

PLEADING—OBJECTIONS TO INTRODUCTION OF EVIDENCE CHALLENGES SUFFICIENCY OF PETITION—OIL LEASES—EXTENSION OF TIME FOR COMMENCING OF WORK—DEFECT IN PETITION CURED BY ANSWER—MINES AND MINERALS—WHETHER "DRILLING OPERATIONS" COMMENCED IS A QUESTION OF FACT—WORDS AND PHRASES.

1. Where objections to the sufficiency of a petition are made for the first time upon the trial, the pleading should be liberally construed and effect given to every legal intendment so that it may be sustained if possible.

2. A petition alleging that an oil lease carried certain quoted indorsements extending the time for plaintiff lessees to commence work, held, sufficient to show an extension of the lease as against an objection to the introduction of evidence made at the trial.

3. Any defects in a petition as to allegations of an extension of time granted to commence drilling operations under an oil lease, were cured by admissions in the answer that the time for such work was extended to the date mentioned in the petition.

4. Allegations that the lessees of oil lands had staked the location of the first well, had placed lumber on premises for repairing a derrick for drilling purposes, and had contracted for bringing a derrick upon the leased lands within the time prescribed for commencing drilling operations, and that within ten days after such time limit a derrick was installed on the premises despite difficulties caused by snow, etc., held, not to establish, as a matter of law, that the lessees had failed to commence "drilling operations" within the prescribed time.

5. An objection to the introduction of evidence upon the ground that the petition states no cause of action raises the question whether the pleading is legally sufficient.

APPEAL from the District Court, Park County; HON. E. C. RAYMOND, Judge.

Action by James M. Fast and others against F. A. Whitney and another to enjoin lessors from asserting a forfeiture of an oil lease and interfering with drilling operations of lessees. There was a judgment for defendants and plaintiffs appeal.

*C. A. Zaring* and *R. B. Landfair,* for appellants.

The trial court, upon objections made by defendants to the introduction of evidence, ruled that the petition did not state a cause of action, dismissing plaintiff's action and entering judgment for defendants; the action was for injunction; it is a proper remedy where a lessor re-enters and claims forfeiture (Thornton on Oil and Gas, sec. 103; Gas Co. v. Poterie, 153 Pa. St. 10; Ohio Oil Co. v. Hurlbut, 7 Ohio Cir. Dec. 321); in construing a lease the entire instrument will be considered to arrive at the intention of the parties (Oil Co. v. Kelly, 6 O. C. D. 470; Elliott on Contracts, 1515); the intent is the essence of every agreement (Lachmund v. Sing, 120 Pac. 598); a lease will be construed most strongly against the lessor (24 Cyc. 915); staking out a location, contracting for lumber for rigs and cutting timber, is a commencement of operations (Duffield v. Russell, 65 O. St. 605); lessors are estopped from declaring a forfeiture (Thornton O. & G. 257); forfeiture of a lease will not be permitted where lessor has expended or is expending money without an opportunity first given to more speedily develop the property (Oil Co. v. Hurlbut, *supra,* 60 O. St. 613); justifiable delay will not work a forfeiture (Longworth v. Taylor, 1 Ohio Fed. Dec. 643).

*E. E. Enterline* and *W. L. Simpson,* for respondents.

The court sustained a demurrer *ore tenus* to the petition; respondents have moved to dismiss the appeal on the ground that the record on appeal does not show that it was filed in the office of the Clerk of the Trial Court as required by laws of 1917, chap. 32, sec. 4-10. Statutes must be com-

plied with (2 R. C. L. 73) ; the allegations of the petition are insufficient to show commencement of drilling opera-tions; there is a distinction between a commencement of operations and a commencement of drilling operations; there was no waiver by the lessors; there can be no waiver of a non-existent or lost right (40 Cyc. 258; Inv. Co. v. Marrow, 108 Cal. 490, 41 Pac. 487; Ins. Co. v. Lbr. Co., 11 Okla. 585, 61 Pac. 938) ; there are no allegations of es-toppel in the petition (10 N. C. L. 149; Hallick v. Bresnahan, 3 Wyo. 73) ; respondents had a right to declare a forfeiture and to have the title quieted in them (Thornton on O. & G. 782; Huggins v. Daley, 99 Fed. 606; Detler v. Holland, 57 O. St. 492, 49 N. E. 690; Oil Co. v. Oil Co., 34 S. E. 923; Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 57 C. C. A. 428; Iron Co. v. Trout, 83 Va. 397) ; the judgment below should be affirmed.

POTTER, JUSTICE.

This case is here on appeal. It is an action brought to en-join the lessors from asserting a forfeiture of an oil lease and from interfering with the prosecution of drilling opera-tions by excluding the lessees from the premises covered by the lease. The defendants having filed an answer and cross-petition, without previously objecting to the petition by de-murrer or otherwise, interposed an objection on the trial to the introduction of any evidence by the plaintiffs on the ground that the petition does not state facts sufficient for a cause of action in favor of the plaintiffs or against the defendants. That objection was sustained; and thereupon the defendants introduced evidence in support of their cross-petition praying that their title to the premises be quieted as against any claim of the plaintiffs or either of them.

Judgment was rendered in favor of the defendants, whereby it was ordered that the plaintiffs take nothing in the action, that their petition be dismissed, and that the title of defendants to the premises covered by the lease be quieted as against the plaintiffs. The rulings of the court excluding all evidence by the plaintiffs, permitting evidence to be

introduced in support of the cross-petition, and rendering judgment for the defendants, are specified as error. But the record does not show any exception to the ruling allowing the introduction of evidence under the cross-petition. An exception is shown to the ruling sustaining the objection to the introduction of any evidence by the plaintiffs, and also to the findings, decision and judgment. And the only questions presented here by the briefs relate to the sufficiency of the petition to state a cause of action.

The petition sets out the lease in *haec verba*, together with all endorsements thereon, and alleges that the plaintiffs, James M. Fast, R. B. Landfair and J. C. Reese are the owners and holders of said lease entered into between the defendants, F. A. Whitney and Leona G. Whitney, his wife, and J. C. Reese, on August 14, 1916. The premises, as described in the lease, are located in Park county, in this state. By the terms of the lease the lessor grants, demises and leases unto J. C. Reese, "all the oil, petroleum, gas, hydro-carbons, water and minerals of every kind and character whatsoever in or under said lands and the right to sever and remove the same; also the right to construct and maintain telegraph, telephone, pipe lines, roadways from adjoining lands on or across the demised premises; the right to construct and maintain buildings, derricks, tanks and other structures used or necessary for the boring or excavating, preserving and handling of oil, gas, hydro-carbons, water and other minerals produced on the demised premises. To have and to hold the same unto the said lessee for the full term of 5 years from and after the date hereof, and as much longer as either oil, gas, hydro-carbons, water and other minerals in paying quantities are produced, provided that all covenants and conditions hereof are fully kept and performed by the said lessee. Provided: The said lessee commences drilling on said lands or within a radius of one mile from said property within 60 days from the date hereof and carry forward the work of completion with all reasonable dispatch unless prevented by strikes, the elements, un-

avoidable accidents or causes beyond the control of the lessee."

The lease contains also the following material provisions, stated in the order in which they are expressed in the lease: "In case no well be commenced at the place and within the time provided for herein, this lease shall become null and void and without any further effect whatever, unless lessee shall pay for the delay at the rate of........cents per acre for each and every twelve months thereafter or until a well is commenced as provided for herein, or this lease be surrendered. Such payment may be made to the lessor at his address or be deposited to his credit in the First National Bank of Meeteetse, Wyo." "The lessee further agrees that drilling operations shall be commenced and diligently prosecuted on the lands specified in this agreement within 60 days from the date of this lease." The lease further provides that the lessee shall have the right and privilege at any time to assign, transfer or sublet the lease or any part thereof.

After setting out certain endorsements on the lease, alleging that the lease bears such endorsements, extending the lease, first, for 30 days from the date of the lease, and second, to December 14, 1916, and assigning one-third of the interest of the lessee, Reese, in the lease to R. B. Landfair and one-third to James M. Fast, and alleging that the lease, together with said endorsements, was filed for record in the office of the county clerk of Park County on December 16, 1916, the petition alleges as follows:

"Plaintiffs say they have performed each and every obligation of the said contract on their part to be kept and performed; that on the 12th day of December, 1916, the plaintiffs, together with the defendant, F. A. Whitney, proceeded to the premises described in said lease and set a 'stake' for the location of the first well on said premises; that on the 13th of December, 1916, plaintiffs caused to be placed on said premises lumber for the repair and addition of a derrick, for drilling purposes, that plaintiffs had contracted to be torn down from another location, about three miles

away, and moved, and to be erected on the lands of the defendants.

"That the premises of defendants described in the contract of lease are about six miles up the Greybull River from Meeteetse, Wyo., and about 41 miles from a railroad. That during the month of December and after the commencement of the drilling operations herein set forth there was a great amount of snow on the ground for miles around Meeteetse, Wyo., and in and around the premises of the defendants and the hauling of material was almost impossible and it was difficult for workmen to get in and around said premises, but that on or about the 24th and 25th day of December, 1916, the plaintiffs caused said derrick, about three miles away, to be torn down and contracted with a teamster at Meeteetse, Wyo., to haul same to the premises of the said defendants. That arrangements were made about the 12th day of December, 1916, with the defendants to take care of the teamsters at their said premises and to take care of the rig builders. That the defendants, when the teamster stopped at their said premises, were told by the defendants they could not stay there, and defendants also refused to take care of the men engaged in tearing down the derrick, which made it a great inconvenience for plaintiffs, there being no other place of accommodation in the neighborhood, and plaintiffs were thereby put to a disadvantage in diligently proceeding to the development of said premises."

It is then alleged that before plaintiffs could proceed further with the drilling operations on said premises the defendants re-entered the premises without cause, and took possession thereof, and have excluded the plaintiffs therefrom since December 26, 1916, and caused written notice to be sent to the plaintiffs dated on that date, stating in substance that by reason of the failure of the lessee or his assigns to comply with the terms of the lease, the said lease is terminated, and they, the defendants, had re-entered into possession of the lands, and notifying the plaintiffs to remove therefrom and not to interfere with the possession.

of defendants. And: "That the said defendants reside at Meeteetse, Wyo., and at their said premises, and the bad condition of the weather and the roads were well known to them at the time, and no notice or request was made by the defendants, or either of them, upon the plaintiffs or either of them, that the said plaintiffs were not diligently prosecuting drilling operations on said premises of the defendants but the said defendants have since said 26th day of December, 1916, held said premises against said plaintiffs, although plaintiffs have been and are still ready, able and willing to keep and perform every obligation on their part to be kept and performed. That the said plaintiffs had before the receipt of the notice from defendants, herein set out, expended a large sum of money in prosecuting the drilling operations on defendants' premises, to-wit, in the sum of $700.00, and defendants knew, before they sent the above notice to plaintiffs claiming forfeiture, that plaintiffs were expending time and money in the prosecuting of drilling operations for oil and gas on their said premises and said defendants made no remonstrance or objection but acquiesced in the same and the only time that plaintiffs knew of any objection on the part of the defendants was the receipt of the notice of forfeiture from defendants."

The record does not show the specific objections urged against the petition upon the trial. But it is stated in the brief of appellants that the question before the court was, "What was the commencement of a well", or the "commencement of drilling operations", and that the position of defendants in the trial court was that a well was not commenced by setting a stake for its location and hauling lumber upon the premises for a derrick. And the principal objection urged against the petition in the brief of respondents is that it does not show that drilling or drilling operations were commenced within the time required by the lease. But they also present three points with reference to the endorsements upon the lease extending it: 1. That such endorsements do not show that additional time was granted for commencing drilling operations. 2. That

neither endorsement shows any consideration for an extension; and that the petition does not allege a consideration therefor. 3. That the petition does not allege an extension of the time for commencing drilling operations.

The objections having been made and presented for the first time upon the trial, as grounds for objecting to the introduction of evidence, the petition is to be liberally construed and effect given to every legal intendment, so that it may be sustained if possible (City of Rawlins v. Jungquist, 16 Wyo. 403, 94 Pac. 464, 96 Pac. 144; Grover Irr. Co. v. Lovella Ditch Co., 21 Wyo. 204, 131 Pac. 43). In Rawlins v. Jungquist, this court said: "Where no objection to a pleading on the ground of its insufficiency has been made before trial, the most liberal construction will then be adopted to sustain it if possible, and the objection will not then be sustained unless there is an entire omission of a material fact or a total failure to state a cause of action or defense." And in the other case cited, we said that the rule permitting an objection to a pleading for the first time on appeal, on the ground of a defect in substance, excludes objections relating merely to the form or manner in which the cause of action is stated, and requires that the pleading be construed liberally and supported by every legal intendment, and therefore upheld if the necessary facts are fairly to be inferred from the allegations (See also, Cooper v. Hilsboro Garden Tracts, 78 Ore. 74, 152 Pac. 488; Thorp v. St. L. & S. F. R. Co. (Okla.), 175 Pac. 240; Hays v. Miller's Est., 189 Mo. App. 72, 173 S. W. 1096; Young v. Queen Ins. Co. (Mo. App.), 201 S. W. 940).

With reference to the endorsements upon the lease extending it, the petition alleges that the lease bears the following endorsements: Then is set out the endorsements, the first reading: "We hereby agree upon between Mr. F. A. Whitney and Leona G. Whitney, the lessor, and J. C. Reese, the lessee, that this lease shall be extended for thirty (30) days from date of this lease. F. A. Whitney. J. C. Reese. Signed in presence of W. P. Smith. L. B. Merrill." And the second: "November 6th, 1916. In con-

sideration of the sum of one dollar, the time on the within lease is hereby extended to December 14th, 1916. F. A. Whitney. Leona G. Whitney. J. C. Reese. In presence of: R. B. Landfair. Subscribed and acknowledged before me this 6th day of November, 1916. Alex A. Linton, Notary Public. (Seal.) My Comm. expires Dec. 29th, 1918." We think this is sufficient as against the objection made upon the trial as an allegation that the lease or the time thereof was extended as stated in the endorsements, although it would, of course, have been better pleading to allege directly or in so many words that the time for commencing the work mentioned in the lease was duly extended and upon proper consideration. The agreement for the first extension is not dated, but the second is dated November 6, 1916, and for a stated consideration extends the time until a specified date. Neither agreement expressly refers to the time for commencing drilling operations or the drilling of a well. But the lease, dated August 14, 1916, is for the period of five years, and the agreement extending the time to December 14, 1916, could not have referred to or been intended to apply to anything but the time for commencing the work for which a limited time was fixed by the lease. Further, the answer filed in the case not only admits but avers, in effect, that the time for such work was extended to December 14, 1916. After admitting that the plaintiffs had been excluded from the leased premises the defendants "aver and say, that such exclusion was wholly within the terms and conditions of said 'Oil Land Lease', and after the abandonment and forfeiture of said premises by the plaintiffs and their assignee; and after re-entry of said premises * * * by the defendants, on the 14th day of December, 1916, the day and date of the termination of said lease under its terms and conditions." And there are other averments in the answer referring to that date as the expiration of the time limited for commencing the work; thus curing the defect, if any, in the manner of alleging the extension in the petition and waiving the objection. (Pomeroy's Rem. & Rem. Rights, sec. 549).

Upon the principal question in the case it is contended for the respondents, the defendants below, that the sixty-day limitation mentioned in the lease refers to drilling operations or the drilling of a well, and that the lease requires the drilling of a well or drilling operations to be commenced within said period of sixty days, or within the period as extended by the alleged endorsements upon the lease if the petition should be held sufficient to show that the time was extended. As we do hold the petition sufficient in that respect as against the objection made upon the trial, the contention aforesaid is to be considered as referring to December 14, 1916, as the end or expiration of the period allowed for commencing the work, and respondents further contend that the facts alleged are insufficient to show the commencement of drilling operations or the drilling of a well.

It seems to be conceded, and even contended, by the plaintiffs, the appellants here, that the lease requires drilling to be commenced within the limited period on the leased lands or within a radius of one mile therefrom, and also that drilling operations shall be commenced within that period on the leased lands. But they contend that the facts alleged in the petition show the commencement of drilling operations on the leased lands within the limited period as extended, and that thereby both clauses,—the one requiring commencement of drilling on the leased lands or within one mile therefrom, and the other the commencement of drilling operations on the leased lands, were complied with. Referring to certain cases cited by the appellants and contending that they hold only that acts similar to those alleged in the petition are sufficient to constitute the commencement of "operations" under an oil lease, and conceding the correctness of the conclusion of the court in those cases, counsel for respondents maintain that there is a clear distinction between commencing "operations", and commencing "drilling operations" or "the drilling of a well".

We are inclined to doubt there being any reasonable distinction between commencing "operations" or commencing

"drilling operations" under a provision in an oil lease for commencing work within a specified time, using either of those terms to describe the work to be commenced. Ordinarily, at least, a provision in such a lease for commencing operations would seem necessarily to refer to operations for drilling a well, or, in other words, drilling operations. But however that may be, we think it immaterial, so far as the present objection to the petition is concerned, whether the work required to be commenced within the limited time is the drilling of a well or drilling operations, for in either case the question whether the facts alleged are sufficient to show that the required work was commenced within said time is essentially one of fact rather than of law.

The question of whether acts similar to those here alleged are sufficient to constitute the commencement of drilling operations or the commencement of a well, as a question of fact for determination by the court or jury upon the evidence, has been decided differently in the few reported cases where the matter has been considered. In Henderson v. Ferrell, 183 Pa. St. 547, 38 Atl. 1018, the lease required that operations on the premises be commenced within thirty days. Nothing was done until the last day of the period allowed. On that day one of the lessees drove a stake near the center of the lot to indicate the location of the proposed well and the point where the lumber required in the work should be deposited. On the afternoon of that day an employee of the lessees, while unloading some lumber upon the lot in accordance with their instructions, was met by the lessor, who insisted that they had no right to put the lumber there, for the reason that the time allowed for commencing operations had expired in the forenoon of that day. The lessor's insistence that the lumber should not be deposited on the lot resulted in the unloading of the balance of it by the roadside, and he removed from the lot the lumber that had been unloaded there. The stake driven by one of the lessees as above stated had been taken up and carried away by the lessor or some member of his family before

any lumber was unloaded upon the lot, and the lessees were not present when the stake or lumber was removed, or when their employee was forbidden to deposit the lumber where they had directed. The action was in ejectment by the lessees, and the case was submitted to a jury, resulting in a verdict and judgment for the plaintiffs. The court said:

"The lessees had a clear right to enter and commence operations upon the lot on March 5, and if they did so in good faith, and with a purpose to continue the work· in accordance with the provisions of the lease, the resistance of the lessor to their occupancy of the lot furnished no warrant for a forfeiture of the lease. This was the view that was taken of the lessor's action by the learned court below, and which the lessor ·contests on this appeal. As the entry of the lessees upon the lot was before the time allowed for the commencement of operations under the lease had expired, it was *prima facie* at least a lawful entry, and the lessor's action was apparently an unlawful interference with it. It would seem, therefore, that the burden was on him to show conduct on their part which justified his action. But the lessees did ·not rest their suit for the possession of the lot on a bare presumption. They alleged, and introduced evidence to prove that their entry was made in good faith, and with a determination on their part to prosecute with due diligence the work they were authorized by the lease to do. The evidence submitted by them showed the obstructions in the way of an earlier commencement of operations, and the efforts they made to secure the materials, machinery and labor necessary to the proper performance of the work. It also showed that when they commenced operations on the lot they intended and were prepared to continue them, and that their failure to do so was caused by the refusal of the lessor to allow them to proceed. * * * Whether they commenced operations in good 'faith, and whether they intended to proceed with due diligence, were questions for the jury, and so was the question whether their failure to continue them was caused by the action of the lessor. These questions were submitted to the jury in a clear and im-

partial charge, and the result was a verdict based on a find-
ing of facts in accord with the lessee's contention. In other
words, it is established by a verdict authorized by the evi-
dence, that the lessees entered and commenced operations
upon the lot in good faith, and that they were prevented
from continuing them by the unlawful interference of their
lessor."

The report of the case contains the charge of the trial court
to the jury, which was approved by the Supreme. Court, in
which the commencement of operations required by the lease
within the limited time is referred to as meaning the com-
mencement of the drilling of a well, or, as if the lease required
the commencement of a well on the premises within the
specified time. Thus, after stating in the charge, that the
commnecement of operations, or the commencement of any-
thing, might be a very trivial act, it was said :

"It has to be, because everything, be it ever so great, is ac-
complished by doing little things one after the other, and the
commencement of the drilling of a well may be made by doing
an act insignificant in itself. The commencement of the build-
ings for the World's Exposition, perhaps, was the striking of
a pick into the ground. But whether any given act is a com-
mencement or not depends on circumstances. So in com-
mencing operations in the drilling of a well, a very little
thing may be the commencement, while acts more extended
might not be. You must take all the circumstances into
consideration, all the surroundings, to determine the charac-
ter and effect of the act. Now, if the plaintiffs, Adams and
Henderson, went upon this lot on March 5 (which was the
last of the thirty days) and in good faith staked out a loca-
tion for a well, showing where they wished to erect their
derrick, and ordered lumber and had some of it put upon
the lot, with the intention of proceeding with the work on
the next day and continuously thereafter to the completion
of a well, then locating the well on the ground and driving
the stake and hauling the first load of lumber and delivering
it upon the lot, in our opinion, would be a commencement.
But the defendants claim here that what was done was not

done in good faith; that it was, to use a slang expression, 'a bluff'; that it was not followed up; that they didn't do anything between that time and the time this suit was brought, nor between that time and the time the second lease was made; that they abandoned the prosecution of the work. Well now, if that is true, then it was not a commencement to drill a well,—it was simply putting a stake in the ground and putting some lumber there for the purpose of pretending to commence a well, and it would not be a compliance with the terms of the lease. It would be an act that is like and similar to commencing a well, but an act done in bad faith, and would not have the effect that it would have had if it had been followed up and the well completed."

While, therefore, the express requirement of the lease in that case was merely that "operations" shall be commenced within the time stated, it seems to have been considered by the court as requiring, within the limited time, the commencement of a well or the drilling of a well, so that the decision was not based upon the fact that the work to be commenced was described in the lease merely as "operations", instead of drilling operations or drilling a well.

In Fleming Oil & Gas Co. v. So. Penn. Oil Co., 37 W. Va. 645, an action to recover possession of leased premises, it appeared that the lease, dated February 22, 1889, required the lessees "to commence operations for a test well within one year from the date hereof, at some point in said district of Pawpaw, Marion county, and complete the same within eighteen months from said commencement", &c. That the lessees, in the fall of 1889, made preliminary surveys for the purpose of ascertaining the location of the oil belt with reference to a certain farm in said district, and on January 30, 1890, the point at which the test well was afterwards drilled was commenced. That a contract was made with one DeWitt in the fall of 1889, for the drilling of said well, by the terms of which the work was to be commenced on January 31, 1890; that in pursuance of said contract said DeWitt had the timbers for the derrick which were after-

wards used by him in drilling said test well cut and hewn on said farm, between the 1st and the 6th of February, 1890; and in the latter part of January, 1890, said DeWitt contracted with one Barry to haul the machinery which was afterwards used in drilling said test well to said farm, which hauling was delayed for some time by reason of the impassable condition of the roads in that locality. That DeWitt got the material and machinery upon the selected locality, erected the derrick, and completed said well on August 21, 1890. That a second well was commenced on the leased premises on September 25, 1890, and was completed on January 6, 1891. That a second lease had been made by the lessor to another party on February 28, 1890, containing a covenant that the lessor was to be held harmless from the former lease "which expired February 22, 1890". The case was submitted to a jury upon the evidence and under instructions, and there was a verdict for the plaintiff, the lessee under the second lease, and the judgment upon that verdict was reversed by the Court of Appeals. The question before the Court of Appeals was, as stated in the opinion,—"Whether operations were commenced  *  *  * for a test well within one year from the 22nd day of February, 1889, at some point in the district of Pawpaw, Marion County; and, if so, was the same completed within eighteen months from said commencement?"  In determining the first question, the court said:

"Can it be said that, in order to commence operations for a test well, the drill must actually begin to penetrate the rock? I do not so understand the meaning of the expression construed in connection with the facts presented by the record. In many places, in order to sink a well, it is necessary that some sort of wooden or metallic casing be provided for the purpose of excluding the soil and clay which must be passed through before the rock is reached; and it would hardly be contended that the purchase and provision of the necessary material for such casing or cribbing was not an important step towards putting down the well. Webster defines the word 'operation' as 'an effect brought

about in accordance with a definite plan'; and, in giving the interpretation ordinarily ascribed to the words 'to commence operations'—that is, applying to the words their common acceptation—I would understand·the expression to mean the performance of some act which has a tendency to produce an intended result.  *  *  *  The terms of the covenant contained in said lease must be considered as having been complied with, no matter how slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in putting down the test well if commenced·before the 22nd day of February, 1890.  Procuring the derrick timbers is a work which must necessarily precede the manipulation of the auger and drill by means of an engine and other machinery, and the act of cutting and hewing the timbers for the purpose of constructing the derrick which was used in drilling said test-well can be regarded in no other light than that of an important and indispensable portion of the operations in drilling said well.  This portion of the work was completed by the 6th day of February, 1890.  The machinery was ordered previous to that time, and the well had been located.  In these circumstances, our conclusion is that operations for the drilling of said test-well were commenced within the year commencing with the date of said lease,  *  .*  *  ."

Another case in which this question was considered upon the evidence is Duffield v. Russell, 19 O. C. C. Rep. 266. The provision for commencing work in the lease involved in that case was: "The party of the second part further agrees to commence operations within sixty days from the date hereof, or in lieu thereof to pay the first party one dollar per acre per annum." It was shown by the evidence that on the last day of the sixty-day period the lessee staked out the well upon the leased lands in the presence of the lessor, who then contracted to sell to the lessee the timber for the purpose of building a drilling rig for the well. That the lessee had men there at the time to cut the timber, and part of it was cut that day. The lessee explained as an

excuse for not doing any part of the work earlier, that it was almost impossible to obtain the necessary machinery, implements and lumber at the point of supply for the purpose of building a rig and drilling the well during the sixty days; that there was an extensive oil excitement in that vicinity making the demand for such necessary articles greater than the supply, and that he was also delayed by sickness. The court said that if, "irrespective of all this, he did 'commence operations' on the last day of the sixty days, that was all that he was bound or required to do, if he in good faith intended to continue the work and perform his contract with reasonable diligence. If the staking out of the well, making the contract for the timber for the rig and cutting a portion of the timber upon that day was a commencement of operations, then his lease is valid, as we think he intended, in good faith, to continue operations and perform his contract. We think there can be no question but that what he did upon that day was a commencement of operations within the meaning of this contract. On general principles we would say this, because the commencement of operations upon the land for the development of oil or gas, if done honestly and bona fidely, with the intention of developing, may consist of a trivial and comparatively insignificant matter when we take into consideration what is to be done. Any act, the performance of which has a tendency to produce the desired result, is a commencement of operations." The court further said:

"But further than that, it is clear from the evidence, in this case, that the lessor understood, and acted upon the assumption that Russell was in the rightful performance of his contract. He was there when the stake was driven and the well located. There was an ice house that would probably interfere with the construction of the rig at that point on his land, and he agreed to remove it, and instead of notifying Russell that the lease was forfeited, he entered into a contract with Russell that day for the sale of the timber for the rig, pointed out the timber in the woods, and knew part of it was cut and that his son had agreed to

haul it for Russell; and until he was approached by Duffield and was offered $1,000.00 for a lease to him, he treated Russell as being properly in possession of the land; and afterwards when Hall told him he was going to buy an interest in the lease from Russell if everything was all right, he said the lease was valid and everything was satisfactory between them, and induced Hall to take an interest in the lease. Having himself thus acted, and thus acknowledged that Russell had performed his contract, and that the lease was valid, it would not become this court now to say otherwise."

The question was also considered upon the facts shown by the evidence in a Louisiana case (Hudspeth v. Producers' Oil Co., 134 La. 1014). As stated in the opinion of the court in that case, the contract required the lessee, within a stated time, "to commence operations on the tract by drilling, boring, or mining for oil." It was held, that selecting a location for a derrick, clearing the ground— about 12 acres, and sawing blocks on the ground for derricks, all done for the purpose of erecting derricks, was a sufficient commencement of the work to satisfy the condition of the lease, and that therefore the lessors had no legal right to declare the contract a nullity. But in a Texas case, Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108, where the lessee was required by the contract to begin a well within four months, and he made no preparation to begin work until the day before the expiration of the prescribed time, and on that day hauled a load of lumber upon the premises intending to construct a derrick to be used in boring an oil or gas well, the jury found upon the evidence that what was done was not the beginning of a well, and the judgment upon the verdict was sustained. The appellate court said:

"The issue as to the meaning of the term used in the contract, considered in connection with the testimony in the case as to the general understanding among persons engaged in the business of boring oil wells as to when a well was begun, was submitted to the jury under proper instructions,

and the jury found that a well was not begun, as that term was used in the contract, until the actual boring in the ground was commenced.   This finding of the jury is supported by the great preponderance of the evidence, and is not assailed by the plaintiff."

And in a Kansas case, Henning v. Wichita Natural Gas Co., 100 Kans. 255, 164 Pac. 297, the lease containing a provision for a cancellation of the lease if the lessor should make a bona fide sale of the land before the lessee commences operations to drill thereon, it was held, that the driving of stakes to indicate the location of a well and of a boiler to run a drilling rig was not a commencement of operations to drill, within the meaning of the lease, "especially of such operations as will defeat a sale made before the defendant has put drilling material or machinery on the ground."

As we understand these cases, none of them declares, as a matter of law, that there is a distinction between commencing a well or the drilling of a well and commencing operations for drilling, with respect to the acts necessary or sufficient to constitute a commencement of the work, or that there is such a distinction in fact.   But in the cases holding that the acts shown to have been done within the limited time constituted a commencement of operations, it was so held for the reason that said acts were a part of the necessary work in drilling or sinking a well or boring for oil. In the Texas case where, in a contest solely between the lessor and lessee, it was found that what was done was not the beginning of a well, the question was considered not alone upon evidence of the work done preparatory to actual drilling, but also upon testimony showing the general understanding among persons engaged in the business of boring oil wells as to when a well was begun, and the court said that the finding that a well was not begun was supported by the great preponderance of the evidence.   And in the Kansas case, where a vendee of the lessor was a party, and the lease provided that it should be cancelled if the lessor should make a bona fide sale of the land before commencement of

operations, it was held that the mere driving of stakes to indicate the location of a well was not the commencement of operations sufficient to defeat a sale made before the lessee had put drilling material or machinery on the ground.

And we think that it cannot properly be held as a matter of law that the alleged acts of the lessees in this case, if done in good faith and intending diligently to prosecute the work to completion, do not amount to the commencement of drilling operations or the drilling of a well, within the meaning of the provisions of the lease here in question limiting the time for commencing such work. In the Texas case, *supra,* the trial court refused an instruction to the effect that the hauling of lumber on the land for the purpose of 'beginning the construction of an oil well, and pushing it diligently to completion, was the beginning of the well as contemplated by the contract. And, holding that the refusal of such instruction was not error, the appellate court said:

"It certainly cannot be contended that the plain import of the words used in the contract is that any work done preparatory to the boring of the well would be the beginning of the well as contemplated by the contract, and the court could not so determine the meaning of the contract as a question of law."

In the Pennsylvania case of Henderson v. Ferrell, *supra,* it was directly held that whether operations were commenced in good faith, and whether the lessees intended to proceed with due diligence, were questions for the jury, and that upon the evidence relating to those matters the trial court would not have been justified in giving a peremptory instruction to find for the defendants, who claimed possession under a second lease.

And the question is presented in this case as one of law. An objection, upon the trial, to the introduction of any evidence, on the ground that the petition fails to state a cause of action is in the nature of a demurrer *ore tenus* (Cleveland v. Bateman (N. M.), 158 Pac. 648; Rothe v. Rothe, 31 Wis. 570; Jenks v. Allen, 151 Wis. 625; Stutsman County v. Mansfield, 5 Dak. 78, 37 N. W. 304; Belknap

Glass Co. v. Kelleher, 72 Wash. 592, 130 Pac. 1123). A demurrer, as said in Gould on Pleading, "merely advances a legal proposition, viz, that the pleading, demurred to, is insufficient in law, to maintain the case shown by the adverse party." In Pease v. Phelps, 10 Conn. 62, it is said: "A demurrer presents only an issue of law to the court for consideration." And in Rice v. Rice, 14 Ore. 337, 10 Pac. 495: "Its only office is to raise issues of law upon the facts stated in the pleadings demurred to." (See also Miller v. Cross, 73 Conn. 538.) So upon objection to the introduction of any evidence on the ground that the complaint or petition is insufficient to state a cause of action, the question presented is, whether, in law, the pleading is sufficient (Kain v. Larkin, 141 N. Y. 144; Abbott v. Easton, 195 N. Y. 372; Chism v. Smith, 210 N. Y. 198; Shuber v. McDuffee (Okla.), 169 Pac. 642).

Under the rule above stated for construing the petition as against an objection to the introduction of any evidence, we think it sufficient as against such an objection to show the good faith of the plaintiffs, and that what is alleged to have been done by them within the limited period was with the intention to proceed diligently with the work of drilling a well to completion, and that such good faith and intention are fairly to be inferred from the averments. It is alleged not only that on December 12, 1916, a stake was set for the location of the first well on the premises, and that on the next day, also within the period of limitation, plaintiffs caused to be placed on said premises lumber for the repair and addition of a derrick for drilling purposes, but also that they had contracted for the tearing down from another location, about three miles away, of a derrick to be moved to and erected upon the leased lands; and further, that during the month of December and after the commencement of such operations there was a great amount of snow on the ground, making the hauling of material almost impossible, but that on or about the 24th and 25th of December, 1916, plaintiffs caused said derrick to be torn down and contracted to have the same hauled to said premises; that

the "plaintiffs have been and are still ready, able and willing to keep and perform every obligation on their part to be kept and performed; and that before receiving the forfeiture notice from defendants the plaintiffs had expended $700 in prosecuting the drilling operations. Also that arrangements had been made with the defendants on December 12 to take care of the teamsters and the rig builders at their said premises.

In addition to the allegations as to what was done by the plaintiffs are averments to the effect that the defendants assented to or acquiesced therein, for it is alleged that the stake for the well was set by the plaintiffs together with F. A. Whitney, one of the defendants, and on the same day an arrangement was made with the defendants to care for the teamsters and rig builders. And it is expressly alleged that defendants knew that plaintiffs were expending time and money in prosecuting such drilling operations, and made no remonstrance or objection, but acquiesced in the same until sending the notice claiming a forfeiture.

We conclude, therefore, that the court erred in sustaining the objection to the introduction of any evidence, and for that reason the judgment must be reversed and the cause remanded for a new trial. It will be so ordered.

*Reversed and remanded.*

BURGESS, District Judge, concurs.

CHIEF JUSTICE BEARD and JUSTICE BLYDENBURGH being unable to sit in said cause, HON. JAMES H. BURGESS, Judge of the Fourth Judicial District, and HON. CHARLES E. WINTER, Judge of the Sixth Judicial District, were called in to sit in their stead. JUDGE WINTER, having resigned as District Judge after the submission of the cause, did not participate in the decision.