JACKSON et al. v. ANGLIN et al.
(No. 981.)

(Court of Civil Appeals of Texas. Beaumont.
June 13, 1923. Rehearing Denied
June 20, 1923.)

1. Courts ⟷104—Evidence not discussed in detail, where verdict has support therein.

When a jury's verdict has support in the evidence, the Court of Civil Appeals will not generally discuss the evidence in detail, but will merely mention the substance of that most favorable to appellants, but where the verdict is not sustained by the evidence and the judgment is reversed for that reason, it will usually point out at reasonable length wherein the evidence is insufficient.

2. Mines and minerals ⟷109—Whether one commencing drilling oil well on last day for beginning as contemplated by contract held for jury.

Whether one who commenced drilling a 3,500-foot oil well and drilled to a depth of between 40 and 50 feet on the day, on or before which his contract required him to begin drilling, with an engine, rig, and bit admittedly insufficient with which to continue the work, commenced the well as contemplated by the contract, which required that he not only begin drilling on or before such date but that he prosecute the drilling with reasonable and prudent dispatch to completion, or merely did so as a pretense or subterfuge to prevent forfeiture of his bond or save his rights under the contract, held for the jury.

Appeal from District Court, Limestone County; A. M. Blackman, Judge.

Action by Zeph Anglin and others against C. B. Jackson and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. H. Graham, of Dallas, for appellants.
C. S. & J. E. Bradley, of Groesbeck, for appellees.

HIGHTOWER, C. J. On July 26, 1921, C. B. Jackson, one of the appellants here, and Zeph Anglin, one of the appellees, acting for himself and as trustee for a number of business associates, entered into a written contract, by the terms of which Jackson obligated himself to drill a test well for oil and gas on certain land in Freestone county, to which Anglin and his associates held leasehold rights. The contract provided that the well should be drilled to a depth of 3,500 feet, unless oil or gas should be found in paying quantities at a lesser depth. The contract further provided that drilling of the well should be begun on or before October 1, 1921, and prosecuted with reasonable and prudent dispatch to completion. The contract further provided that Jackson should execute a bond in the sum of $5,000 to secure performance by him of his contract to begin the drilling of the well on or before October 1, 1921. In keeping with this provision of the contract, Jackson, on the same day, executed a bond, with the appellant Underwood as surety, binding Jackson to begin or cause to be begun drilling of the well on or before October 1, 1921, as he had obligated himself to do in the written contract, and the bond expressly referred to the contract.

It might be well to here copy the second and third clauses of the contract:

"Second: Party of the second part (Jackson) agrees to drill the test well upon some part of said lands, to the depth hereinbefore provided (3,500), at his own expense, and agrees to begin drilling same on or before October 1, 1921, and prosecute the drilling of same with reasonable and prudent dispatch to completion."

"Third: Party of the second part (Jackson) agrees to execute and deliver to party of the first part (Zeph Anglin and his associates) a good and sufficient bond in the sum of five thousand ($5,000) dollars, payable to party of the first part, in Groesbeck, Texas, conditioned that party of the second part will begin drilling said well by October 1, 1921, otherwise, the amount of said bond is to be forfeited. * * *"

We also here copy the material provisions of the bond:

"Know all men by these presents: That whereas Zeph Anglin, trustee, of Limestone county, Texas, and C. B. Jackson, of Dallas county, Texas, have entered into a contract in writing, of date July 26, 1921, by the terms and provisions of which said C. B. Jackson has agreed, contracted, and undertaken to drill a test well for oil and gas within the boundaries of certain tracks of land mentioned and referred to in said contract, and has agreed to begin drilling said well on or before the 1st day of October, 1921.

"Now, therefore, C. B. Jackson, as principal, and J. A. Underwood, as surety, acknowledge themselves obligated and bound to pay to Zeph Anglin, trustee, the sum of five thousand ($5,000) dollars, at Groesbeck, Texas, on demand, after October 1, 1921, provided that if said C. B. Jackson shall begin drilling said well or cause same to be begun by October 1, 1921, this obligation shall be null and void. These covenants, agreements, and, obligations shall extend to the heirs and assigns of the parties hereto.

"Witness our hands this 26th day of July, A. D. 1921.        C. B. Jackson, Principal.
"J. A. Underwood, Surety."

Now the appellees filed this suit in the district court of Limestone county against Jackson as principal and Underwood as surety on the bond, alleging that Jackson did not begin or cause to be begun, in good faith, the drilling of said test well on or before October 1, 1921, and thereby breached the bond, and praying for judgment in the sum of $5,000.

Jackson and Underwood answered by general demurrer and general denial, and then specially answered that drilling of the well

was begun before October 1, 1921, as contemplated by the contract and bond, and that therefore there was no breach of said bond.

The case was tried with a jury and the issue made by the pleadings was submitted in the following form:

"Did the defendant C. B. Jackson begin or cause to be begun prior to October 1, 1921, the drilling of a test well for oil and gas within the boundaries of certain tracts of land mentioned and referred to in the contract of date July 26, 1921, which has been introduced in evidence in this case? This question you will answer 'Yes' or 'No.'"

The jury answered the issue in the negative, and judgment was rendered in favor of the plaintiffs against defendants in the sum of $5,000, with interest at the rate of 6 per cent. per annum from date thereof, and both defendants have prosecuted this appeal, and in their brief present three assignments of error. By the first assignment, it is complained that the trial court erroneously refused to peremptorily instruct a verdict in favor of defendants; and by the second assignment it is complained that the trial court erroneously refused to grant defendants a new trial; and by the third assignment it is complained that the trial court was in error in entering a judgment on the jury's verdict in favor of plaintiffs. Under each of these assignments it is contended by the appellants that the uncontradicted evidence adduced upon the trial showed that Jackson caused the drilling of the test well to be commenced by October 1, 1921, as he had obligated himself to do, and that therefore there was no breach of the bond sued on, and no recovery could be had as for a breach. As all three of these assignments raise practically the same legal question, they will be disposed of together.

[1] After careful consideration of all the evidence upon which the jury's verdict is based, we have reached the conclusion that it was sufficient to sustain the verdict, and that none of the assignments should be sustained. As a general rule in this court, when we conclude that a jury's verdict has support in the evidence, we do not discuss the evidence in detail, but merely announce our conclusion upon the point. On the other hand, where we consider that a jury's verdict is not sustained by the evidence, and reverse the judgment for that reason, we usually try to point out at reasonable length wherein the evidence is insufficient. So in this case we shall not discuss in detail the evidence which we think sustains the verdict, but will only mention the substance of that which is most favorable to the appellants.

The case is very similar in its facts to that of Moore v. West (Tex. Civ. App.) 239 S. W. 710, and, to some extent, similar to Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108. In both those cases, the lessee in the contract commenced operations under the contract at the "eleventh hour," so to speak, and claimed that what he did was sufficient (in the first case) to save a forfeiture of his bond, and, in the second case, to prevent a forfeiture of his rights under the contract. In both cases, however, it was held by the appellate court that it was an issue of fact for the jury to determine, whether the bond in the one and the contract in the other was complied with. In Moore v. West, the lessee had entered into a bond to secure performance of his contract to commence drilling by a certain date, and just before the expiration of the time in which the lessee was to commence drilling, he, for the first time, commenced to get busy under this contract by hurriedly erecting a derrick upon the premises and placing necessary material thereupon, and, on the day before the time limit under the contract had expired, the lessee had drilled a hole a few inches deep, and stopped. When he was sued upon his bond, which bound him to commence the drilling by a certain date, or forfeit the amount of money in the bond specified, he pleaded that there was no breach of his bond, and therefore no liability to the plaintiff thereon, because, as he alleged, he did actually commence drilling of the well before the expiration of the time limit in his contract. To this the plaintiff replied that while it was true that the defendant had erected a derrick and put some material upon the premises and drilled a hole a few inches deep, that, nevertheless, his operations, to that extent, were but a mere subterfuge and pretense to prevent a forfeiture of his bond in favor of the plaintiff, and that he had not commenced the actual drilling of a well in contemplation of his contract and in good faith to carry it to completion, as he had bound himself to do. In the trial court in that case, judgment was awarded against the lessee as for breach of the bond, and the San Antonio Court of Civil Appeals, speaking through Judge Cobbs, held that it was a question of fact for the jury's determination in that case as to whether the defendant's operations upon the premises constituted a compliance with his contract in commencing drilling within the time limit, or whether what the defendant did was merely done as a subterfuge and pretense to save forfeiture of his bond, and the verdict and judgment in that case, determining the issue of fact against the defendant, was sustained by the appellate court.

[2] It is true that Jackson, in this case, on the last day of his contract, had drilled a hole to a considerably greater depth than the defendant had done in the West-Moore Case, but the circumstances under which this was done in the instant case, we think, were such as to leave it a question of fact for the jury's determination as to whether the well was commenced in contemplation of the provisions of the contract. We do not agree with counsel for appellants, in their conten-

tion under their assignments here, that merely because the evidence of their witness R. L. Hughes showed that he had actually commenced drilling on the premises by the 1st day of October, as provided in the contract, and that he drilled, on that day, to a depth of between 40 and 50 feet; that that fact alone made it conclusive that the drilling of the well was commenced in contemplation of the contract between the parties. The provisions of the contract, as we have quoted them, were that the drilling should be commenced and prosecuted with reasonable dispatch and prudence to completion. The contract expressly so declared, and the bond expressly referred to the contract, as we have shown, and it was certainly contemplated by the parties that drilling should not only be actually begun on or before October 1, 1921, but that such beginning of operations should be prosecuted with reasonable dispatch and prudence.

Now we have already shown that the little engine with which the drilling in this case was commenced was entirely insufficient with which to continue to prosecute the work, and the derrick erected by Hughes was entirely inadequate as a derrick for a well that must be drilled to a depth of 3,500 feet, if necessary, for a test, and Hughes and Jackson admittedly knew this. We cannot agree, as argued by counsel for appellants, that the question of good faith in commencing such operations as were commenced by Jackson was immaterial, but, on the contrary, we think that the contract as expressly made by the parties, as we have shown, compelled Jackson to commence the drilling of the well in good faith before the expiration of the time limit and with the intention on his part to thereafter prosecute such drilling so commenced with reasonable dispatch and prudence to completion. If he did not have such intentions when this well was commenced with this little insufficient engine and rig and a bit which was admittedly too small to commence a hole that might have to be drilled to a depth of 3,500 feet, and he caused Hughes to go upon the premises and do what he did merely to prevent a claimed forfeiture of his bond or to save his rights under the contract, but not expecting or intending that Hughes should continue to prosecute the drilling as the contract had bound him to do, then his act was nothing more than a pretense or subterfuge, and the jury was warranted in so believing.

We do not think that because Hughes might have intended, as he testified, to continue prosecution of the drilling as he had commenced it, and that it was his purpose to bring upon the premises a rig sufficient for such prosecution, and that he would have done so had Jackson kept his contract with him, is decisive of the question in this case as to whether drilling of the well was commenced within the time limit specified in the contract and bond. In other words, we do not believe that Hughes' intentions in the matter are at all decisive of the question, but rather think that it depended largely upon Jackson's purposes and intentions. If Jackson knew or thought that he was not going to be able to have Hughes go on with the drilling, after such commencement as he made, but merely had Hughes go there and commence, as he did, and quit, as he did, because not paid by Jackson, then we think that Jackson did not begin or cause to be begun the drilling of this well in contemplation of his contract, which was to not only commence the actual drilling by October 1, 1921, but to prosecute it with reasonable dispatch and prudence, after being commenced, to completion. Mr. Hughes testified that Jackson was broke and could not carry out his contract with him, and furnished him no money, as he had agreed to do, and that this was the reason he quit the job. As we have shown, Jackson did not take the stand, and therefore we know nothing of his purposes and intentions in sending Hughes upon the premises. Certainly, he knew that he had no money, if that be a fact, and it stands to reason that he did not expect Hughes to go on with the drilling without being furnished money by Jackson, in accordance with the latter's promise. If a forfeiture of the bond could be saved upon the ground alone of good intentions on the part of Hughes as to what little he did, then Jackson, by willfully imposing on Hughes, might save a breach of his bond and contract with the plaintiffs in this case, when at the same time he might have had no intention whatever of carrying out his contract to begin drilling and prosecute it with reasonable dispatch and prudence, but might have only intended that Hughes should do what he did as a mere subterfuge and pretense.

In addition to Moore v. West and Forney v. Ward, supra, see, also, Fast v. Whitney, 26 Wyo. 433, 187 Pac. 195; Gonzales v. Cowerd, 78 Okl. 84, 188 Pac. 1054; Henderson v. Ferrell, 183 Pa. 547, 38 Atl. 1018; Guffey v. Oliver (Tex. Civ. App.) 79 S. W. 888.

We think that none of appellants' assignments can be sustained, and that the judgment must be affirmed, and it has been, accordingly, so ordered.